## SISTERS OF BON SECOURS HOSPITAL v. CITY OF GROSSE POINTE.

1. Municipal Corporations—Zoning—Prohibited Land Uses.

   Legitimate land uses may not be prohibited by municipal zoning ordinances unless the prohibition bears a real and substantial relationship to public health, safety, morals, or the general welfare of the community.

2. Same—Zoning Ordinances—Reasonableness.

   The power granted municipalities to enact zoning ordinances is at all times limited by the word "reasonable".

3. Same—Zoning Ordinance—Prohibition of Hospital.

   Zoning ordinance of city, which prohibits the operation of a hospital anywhere south of a certain street, *held*, unreasonable as bearing no substantial relation to public health, safety, morals, or the general welfare, where a hospital, located in the prohibited area before the zoning ordinance was enacted, has demonstrated that it handles a large volume of emergency cases, from the city and neighboring communities, that it needs to expand to improve its services and retain its accreditations, that the area needs more hospital beds, testimony of an expert city planner was that the character of residence "B" districts to the north of the dividing line, in which hospitals were a permitted use, was quite comparable to that of the residence "B" district on the south of the dividing line, in which the hospital was located, and the city asserted that lots were somewhat larger and more valuable south of the dividing line but did not produce any evidence of such a difference (City of Grosse Pointe Zoning Ordinance No 96, § 3.12).

---

References for Points in Headnotes

[1]  58 Am Jur, Zoning § 7.
[2]  58 Am Jur, Zoning §§ 21, 22.
[3]  58 Am Jur, Zoning §§ 129, 130.
[4–6]  58 Am Jur, Zoning § 101 *et seq.*
[7–9]  58 Am Jur, Zoning § 49.
[10]  5 Am Jur 2d, Appeal and Error § 1014.

4. Same—Zoning Ordinance—Off-Street Parking.

> Municipal zoning ordinance which required that hospitals have a certain number of off-street parking spaces based on the number of patient beds and persons on the staff *held*, reasonable and valid, where the only evidence adduced of unreasonableness was an allegation on information and belief that other municipalities in the same county do not require as many off-street parking spaces (City of Grosse Pointe Zoning Ordinance No 96, § 3.11[c][2]).

5. Same—Zoning Ordinance—Invalid Prohibition.

> Hospital located in residence "B" zoning district, in which a hospital is a permitted use, but in a part of the city where use of any land for a hospital is prohibited by another section of the municipal zoning ordinance, remains a permitted use rather than a nonconforming use where the general prohibition on use of any land in the area for a hospital is invalid because unreasonable (City of Grosse Pointe Zoning Ordinance No 96, §§ 3.12, 6.1).

6. Same—Zoning Ordinance—Accessory Use.

> Land owned by hospital in residence "B" district in municipal zoning ordinance, in which a hospital is a permitted use, may be used for off-street parking as an accessory use customarily incident to use of land for a hospital (City of Grosse Pointe Zoning Ordinance No 96, §§ 3.1, 3.12, 6.1).

7. Same—Zoning Ordinance—Building Height Restrictions.

> Building height restrictions in a municipal zoning ordinance are almost universally accepted as bearing a substantial relation to public health, safety, morals, and welfare (City of Grosse Pointe Zoning Ordinance No 96, § 3.15).

8. Same—Zoning Ordinance—Building Height Restrictions.

> Test of validity of building height restrictions in zoning ordinance is the reasonableness of the restrictions, that is, their relation to the promotion of the public good (City of Grosse Pointe Zoning Ordinance No 96, § 3.15).

9. Same—Zoning Ordinance—Building Height Restrictions—Evidence.

> Constitutional invalidity of building height restriction in zoning ordinance, as found by trial court, *held*, not supported by any evidence in the record (City of Grosse Pointe Zoning Ordinance No 96, § 3.15).

10. Costs—Zoning Ordinance—Hospitals.

  No costs on appeal are awarded in action by hospital to declare
    municipal zoning ordinance invalid, where portion prohibiting
    hospital is held invalid but provision as to building height is
    valid (City of Grosse Pointe Zoning Ordinance No 96, §§ 3.1,
    3.12, 3.15, 6.1).

Appeal from Wayne; Moynihan (Joseph A., Jr.),
J. Submitted Division 1 June 6, 1967, at Detroit.
(Docket No. 1,195.) Decided November 27, 1967.

Complaint for declaratory relief by the Sisters of
Bon Secours Hospital, a Michigan nonprofit corpo-
ration, against the City of Grosse Pointe, a munic-
ipal corporation, to declare certain zoning ordi-
nances of the defendant city invalid. Judgment for
plaintiff. Defendant appeals, and Mary G. Batten
and numerous other landowners in the vicinity inter-
vene as appellants. Judgment affirmed in part, and
reversed in part.

Neil D. Hayes (Chris M. Youngjohn, of counsel),
for plaintiff.

Charles H. King, for defendant city.

Arthur M. Hoffeins, for intervenors.

J. H. Gillis, P. J. Plaintiff is a nonprofit cor-
poration operating a hospital within the limits of
the city of Grosse Pointe. The history of the hos-
pital dates back to 1925 when a tract of land was
obtained and a nursing home founded thereon. In
1942 the capacity of the nursing home was increased
to approximately 35 beds and in 1944, upon the or-
ganizing of a medical staff, the nursing home gave
way to a general hospital operation under the name
of Bon Secours Hospital.

Until 1951 the area in which the hospital was located was zoned residence B, wherein hospitals were a permitted use.[1]   In 1951, the city enacted section 3.12 of Ordinance No 96,[2] which prohibited hospitals (and other uses enumerated) in the area of the city lying south of Kercheval avenue.   The residence B

---

[1] Ordinance No 96, § 6.1 provided:

"In a residence B district no buildings or premises except as otherwise provided in this ordinance shall be erected or used except for one or more of the following specified purposes:

"(1) Any use permitted in a residence A district.

"(2) Two-family dwellings.

"(3) Subject to the limitations of section 3.12 above, public buildings and properties, hospitals, and sanitaria, and educational, philanthropic and religious institutions, except penal or correctional institutions or those for the care of the insane, provided there is not in connection therewith any activity which is noxious or offensive by reason of the emission of odor, fumes, dust, smoke, vibration or noise.

"(4) Farms and gardens, provided there is not, in connection therewith, any activity which is noxious or offensive by reason of the emission of odor, fumes, dust, smoke, vibration or noise.

"(5) Accessory uses customarily incident to any of the above permitted uses including not more than 1 private garage for each lot, or for each 10,000 square feet of lot area, and including signs pertaining to the sale, lease or use of a lot or building placed thereon and not exceeding 6 square feet in area on any 1 lot. Dwellings for the use of domestic employees of the owners, lessees or occupants of the principal dwelling on a lot shall be considered accessory buildings but shall conform to all the height and yard requirements for dwellings in the district in which they are located, except that where erected above a private garage, the depth of rear yard, if not abutting upon a street, may be reduced to the dimension prescribed herein for side yards."

[2] Ordinance No 96, § 3.12, provided:

"Regardless of anything otherwise contained in the zoning ordinance of the city of Grosse Pointe, and in addition to the other restrictions contained therein applicable to the building and lands in the area hereinafter described, no land in the city of Grosse Pointe south of Kercheval avenue shall be used for a public or private school; a church or other place of worship; a parish house; a community building or property; a hospital; a sanitarium; a convalescent home; a home for the aged, feeble, children, or the like; an educational, religious or philanthropic institution; a penal or a correctional institution; or for any use of a nature similar to any one or any combination of the foregoing; or for business of any kind excepting buildings and lands in local business districts. Nor shall any building now erected upon any of such land, nor shall any building hereinafter erected upon any of such land, be so used. Existing nonconforming uses at the effective date of this amendment shall be subject to section 3.1 of the zoning ordinance of the city of Grosse Pointe."

classification continued on either side of Kercheval avenue but with the B district to the south subject to the additional conditions imposed by section 3.12.

At the time of enactment of section 3.12, Bon Secours, located to the south of Kercheval, was the only hospital in the city. From 1951 until the present time, Bon Secours continued in existence according to the cited ordinances as a nonconforming use. In 1954 an addition to the hospital brought it to its present capacity of 160 beds.

Throughout the development of Bon Secours, its building height was governed by Grosse Pointe Ordinance No 96, § 6.5 which provided as follows:

"In a residence B district no building shall exceed three stories or 50 feet in height, except that buildings or portions of buildings not used for dwelling purposes and which in the aggregate do not occupy more than 10 per cent of the area of the lot may be erected to a greater height, provided that no portion of such higher building shall be nearer to a side or rear lot line than one third of its height."

On January 21, 1963 the city adopted Ordinance No 112, § 3.15, which amended the above section 6.5. The amendatory section provided that no building shall be erected within the city to a height greater than 3 stories or 36 feet above grade.[3] Upon the adoption of this ordinance, Bon Secours became a nonconforming use as to height as well as to location.

---

[3] Ordinance No 96, § 3.15 (as added by Ordinance No 112) provided:

"Anything herein contained to the contrary notwithstanding, no building shall be erected in the city of Grosse Pointe to a height greater than 3 full stories or 36 feet above grade, whichever is lower, unless the city council grants prior specific approval. Such approval shall not be granted unless the city council determines that the height of the proposed building will not cause any public health or safety hazard, will not create an undue burden on the city's water or sewage disposal systems, and may be properly serviced through existing public utilities facilities."

In May, 1956, the hospital purchased a strip of land to the south of the hospital building approximately 83 feet wide by 785 feet in length. The purpose of this acquisition, as testified to by plaintiff's witnesses, was to provide ample off-street parking for hospital patients, visitors and staff. Section 3.11 (c)(2) was adopted in March of 1957 to regulate parking facilities for buildings other than dwellings.[4] The pertinent paragraph provides:

"For hospitals and welfare institutions, at least 1 parking space for each patient bed and at least 1 parking space for each 5 staff persons."

In connection with its proposed addition, Bon Secours petitioned the city in 1963 for the third time to use its 83-by-785-foot strip for off-street parking. This petition was denied.

One other portion of Ordinance No 96 is material here. On January 21, 1963 the city amended section 3.1 to read as follows:

"Except as hereinafter provided, no building or premises or part thereof shall be used, altered, constructed or reconstructed except in conformity with the provisions of this ordinance which apply to the district in which it is located. However, any lawful nonconforming use existing at the time of passage of this ordinance may be continued provided that the building or premises involved shall neither be structurally altered nor enlarged unless such altered or enlarged part and the use thereof shall both conform to the provisions of this ordinance for the district in which it is located and shall receive specific prior approval of the city council. Such approval

---

[4] Ordinance No 96, § 3.11(c) provided:
"For a new building or structure or for the enlargement or increase in seating capacity, floor area, or guest rooms of any existing main building or the enlargement of a main building, or structure there shall be at least 1 permanently maintained parking space of not less than 176 square feet net area as follows:  *  *  *  [(2) as set forth above.]"

of the city council shall be given only if the council determines that the proposed alteration or enlargement is not likely to produce any undue public health or safety hazard and is in general conformity with the character of the neighborhood involved. No nonconforming use if discontinued for more than 1 year or changed to a use permitted in the district in which it is located shall be resumed or changed back to a nonconforming use."

Bon Secours brought this action for declaratory relief challenging the constitutionality of the ordinances as being unreasonable and arbitrary and further that the ordinances as applied deprive plaintiff of its property without due process of law. The circuit judge declared the ordinances unconstitutional and the city takes this appeal in which neighboring landowners have appeared as intervenors.

Before proceeding to the legal issues presented herein, it will be helpful to outline the obstacles standing in the way of Bon Secours' proposed addition: (1) by the ordinance of 1951 (section 3.12) the hospital was made a nonconforming use; (2) by ordinance section 3.1 of 1963 a nonconforming use cannot be structurally altered or enlarged unless other ordinances are complied with and prior approval of counsel secured; (3) ordinance section 3.11 (c)(2) of March, 1957, requires 1 parking space for each bed, which would not be available to the hospital if it expanded to 320 beds unless its 785-foot strip of land could be used for parking; (4) the proposed parking strip is zoned residential B and was so zoned when acquired by the hospital; and (5) the contemplated addition would exceed the height limitation imposed by section 3.15 (January, 1963).

The argument addressed to the validity of the Kercheval line presents 2 theories which, so far as we are able to determine, are questions of first impression in this State. These are: (1) that a zoning

ordinance whose practical effect is to totally exclude a hospital from the community is invalid; and (2) that a city has no power to vary the uses within 1 single use classification.

There is some authority for both of these propositions. As to the first, the case nearest in point is *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake* (1952), 333 Mich 389. In that case schools and churches were prohibited in all but 3 zones which comprised but 10% of the area of the defendant village. Under the facts and circumstances of the development of the community, the effect was a total exclusion of churches and schools from the village. The Court held the ordinance invalid as not bearing a substantial relationship to the public health, safety, morals or the general welfare of the community.

Likewise, the Supreme Court has expressed its displeasure with single district zoning plans (*Gundersen* v. *Village of Bingham Farms* [1964], 372 Mich 352); has struck down ordinances prohibiting legitimate enterprises anywhere in the community, such as billboards (*Wolverine Sign Works* v. *City of Bloomfield Hills* [1937], 279 Mich 205), drive-in theaters (*Bzovi* v. *City of Livonia* [1957], 350 Mich 489), and trailer parks (*Gust* v. *Township of Canton* [1955], 342 Mich 436).

The gist of these rulings is that legitimate land uses may not be prohibited unless the prohibition bears a real and substantial relationship to public health, safety, morals, or the general welfare of the community. While initially the ordinances were clothed with a presumption of validity, in all the above cases that presumption was overcome by a showing of no relationship between the ordinance and objects of the police power when viewed in light of existing community developments. *Archbishop,*

*supra,* is an exception in that no presumption of validity existed as to the exclusion of schools and churches because of provisions contained in the Michigan Constitution of 1908 (see *Archbishop, supra,* at p 394).[5]

The present case, however, is not a total exclusion case in the sense of no claimed relationship to public health, safety, morals or welfare. As the city claims, the community is a developed one, and hospitals are permitted north of Kercheval where various small, developed parcels are available which conceivably might be used for hospital purposes.

The second of these arguments we have referred to, that is, uniformity within district classifications, is based on the enabling statute which provides in section 1[6] that cities and villages may divide their community into use districts and that regulations may be imposed for each district. Plaintiff's argument is that the defendant city has no authority to disregard district lines by imposing the blanket "south of Kercheval" ban. To be sure the B district south of Kercheval is the same as the B district north of Kercheval but for the superimposition of the amendatory ordinance in question. While the argument is appealing and finds support in at least one recognized text,[7] and Michigan Supreme Court

---

[5] "Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged." Const 1908, art 11, § 1; Const 1963, art 8, § 1.

[6] CL 1948, § 125.581 (Stat Ann 1958 Rev § 5.2931).

[7] 1 Rathkopf, The Law of Zoning and Planning, p 12–1: "The division of the municipality into districts or zones is the method by which the use and development of land and property within such municipality may be controlled and directed in accordance with a comprehensive plan for the development of the community. Without such division of the community into zones, special regulations for different sections of the community in accordance with a plan of development would not be of legal effect. Accordingly, zoning restrictions may vary according to the use classifications established for each type of zone, but regulations within one zone or within

decision,[8] it borders too closely on a mere labeling, to our minds, to base our decision on this premise.

Rather, we proceed to the argument (certainly one much more familiar to our courts) that the south of Kercheval ban bears no substantial relation to the health, safety, morals or welfare of the community. This is likewise the basis of the findings made by the trial judge:

"There is certainly no showing in this record—in fact, the testimony would seem to indicate to the contrary—that not only is there no relation to the public health, safety, morals or general welfare of this community served by the passage of the ordinance in question but that in effect the enforcement of this ordinance might have a serious adverse effect on the public health of the defendant city and its neighboring communities."

The trial judge's finding that the ordinance, which drew a line down Kercheval avenue, is invalid is supported by the record. The city claims that all zoning must begin and end somewhere and that in this case, the lots south of Kercheval avenue are somewhat larger and more valuable than those to the north. The appellee claims that the line is arbitrary, that the ordinance bears no relation to public health, safety or welfare, and that the ordinance is selectively and discriminatorily applied against the hospital.

All zoning begins and ends somewhere and, in that sense, is arbitrary. It is too seldom for practical consideration that a district lies contiguous to a natural border so that its beginning and end will not

---

similar zones must be uniform. Different regulations in different zones will therefore result in different land uses from one zone to the next, but to be valid they must avoid discrimination in the application of those restrictions or regulations with respect to property similarly situated either within a given zone or within zones indistinguishable from each other as to physical factors present."

[8] *Penning* v. *Owens* (1954), 340 Mich 355, 368.

appear arbitrary. Almost invariably the line is drawn in some seemingly arbitrary position—down the middle of a street or perhaps down the center of a field. It is not for the courts to tell local legislators that they have taken the wrong line unless good reason appears why the line they have chosen is improper. Such reasoning would virtually emasculate all zoning, for in almost every case a use is permitted on one side of the line which is prohibited on the other. Can it ever appear reasonable to the prohibited owner to look but a short distance across an arbitrary line and see the use permitted there which is prohibited to him? But the only alternative is no district demarcation at all, for natural boundaries are not prevalent in our large metropolises. A contrary result can only suggest grey areas or buffer zones in which the permitted uses gradually taper into the prohibited. This suggestion, as should be obvious, would surely be the death knell of all zoning.

The defendant city of Grosse Pointe cites authority to this Court of a well-recognized principle that we do not sit as a superzoning board and that in order to invalidate an ordinance the challenging party must first overcome the presumption of validity with which each such ordinance comes clothed; *Brae Burn, Inc.*, v. *City of Bloomfield Hills* (1957), 350 Mich 425. Completely digesting the meaning of *Brae Burn* and its progeny is no small task. It is crucial to note that *Brae Burn* involved property claimed to be useless because of the application of the ordinance. In many zoning cases, before the Supreme Court as well as this Court, a property owner contended that his parcel or tract should really be zoned commercial rather than residential and assigned as a basis therefor that his property is worth less under the ordinance than it would be under different zoning. Thus with understandable

shortness the Supreme Court in *Brae Burn* expressed its concern with the large number of cases ostensibly seeking a greater dollar return on property which came to the courts under the label of "confiscation." It is in this respect that the courts have refused to decide whether a parcel would be better zoned as this use or that use, or whether the line should run down this street or the next.

But to read *Brae Burn* as suggesting that the courts will not review zoning ordinances except where there is no debatable question as to its invalidity, is to do injustice to the language of the case itself:

"The function of the courts, with respect to these cases [zoning cases], lies largely in 2 broad areas: (a) has the legislative body the authority to act? (b) have the requirements of administrative due process been observed with respect to adoption, interpretation, and administration of the ordinance in question? The first brings to us the validity and breadth of the delegation of power. The second brings to us the legality of its use, whether the ordinance was properly adopted, whether exercised as to all alike, regardless of local pressures and improper influences, and similar questions. These are the areas in which we may be presumed to have some degree of competence." *Brae Burn, supra,* at p 437.

Plaintiff in this case does not claim that its property would be better zoned otherwise or that the line should be moved slightly to its advantage. It claims rather that the prohibition of hospitals, churches, schools, et cetera, south of Kercheval avenue bears no relation to the promotion of the public health, safety, morals, or welfare of the community and is therefore invalid. It further contends that because the city allowed a church[9] to be built within the dis-

---

[9] Grosse Pointe Unitarian Church.

trict while denying the hospital's request to expand, the ordinance was being discriminatorily applied to deny plaintiff the equal protection of the law.

We shall not discuss the ramifications of allowing one prohibited use in a district while denying another, for we agree with plaintiff's contention and the trial court's ruling that the "south of Kercheval" prohibition is invalid. While the question has been presented to us on the constitutional plane, the question may also be resolved on the statutory level. To be invalid, a city's enactments need not go so far as to transgress the Constitution—but may simply transgress the statutes from which all local zoning power is derived. *Clements* v. *McCabe* (1920), 210 Mich 207.

The State enabling act is CL 1948, § 125.581 *et seq.* (Stat Ann 1958 Rev § 5.2931 *et seq.*) which provides in section 1 as follows:

"The legislative body of cities and villages may regulate and restrict the location of trades and industries and the location of buildings designed for specified uses and for such purposes divide any city or village into districts of such number, shape and area as may be deemed best suited to carry out the provisions of this section. For each of such districts regulations may be imposed designating the uses for which buildings or structures shall or shall not be erected or altered, and designating the trades and industries that shall be permitted or excluded or subjected to special regulations. Such regulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development."

And, as appropriate commentary on this grant of power:

"The power granted municipalities to enact zoning ordinances is at all times limited by the word 'reasonable.' There can be no question that in the interest of the public health, safety, and general welfare, the municipality has authority to adopt a proper zoning ordinance; but in adopting any ordinance it must meet the test of reasonableness." *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508, 518, 519.

Thus the test of reasonableness is the criterion of validity or invalidity of any zoning ordinance, *Hitchman* v. *Township of Oakland* (1951), 329 Mich 331. And, as stated in *Archbishop* v. *Orchard Lake, supra,* at p 392:

"The owner's right to use is, however, subject to reasonable regulation, restriction and control by the State in the legitimate exercise of its police powers. The test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner in a given case and public health, safety, morals or the general welfare."

The obvious problem of validity in a case such as this is that a hospital is directly and critically connected to the promotion of public health while such concepts as property values or traffic are but indirectly connected. In deciding the reasonableness of the ordinance or its relation to the objectives of the police power, the question is simply whether the prohibitions south of Kercheval have a sufficient relation to public health, safety, morals and welfare of the entire community to bar hospitals and other public or semipublic institutions.

A case cited to us by appellee, from which we quote with approval, is *American University* v. *Pren-*

*tiss* (DC 1953), 113 F Supp 389.[10] American University, a large institution in Washington, D. C., intended to erect a hospital on its campus in conjunction with the university's school of nursing. The campus was zoned residence A, in which hospitals were a permitted use. A number of residents, owners of expensive homes adjacent to the proposed hospital site, objected to the new structure on the basis that it would create traffic congestion, generate noise and impair their property values. The zoning commission, in response to such protests, rezoned the entire 70 acre campus to "Residence A, restricted," in which hospitals were prohibited.

The court discussed many factors of modern hospitals which it considered as bearing upon its decision, to-wit: that the plans called for modern, light-colored structures, to be landscaped and partially obscured from view; and that modern hospitals endeavor to establish "quiet zones" for the welfare of its patients. Moreover the court found that any increases in traffic could be easily absorbed by the existing thoroughfares and that ample parking facilities would obviate the danger of congestion on the neighboring streets.

The court found that the testimony regarding the projected decline in surrounding property values was "based on sheer speculation and pure conjecture." On the other hand, the construction of a hospital is a proper and natural use of the university campus and the pleasantness and quiet of the surroundings would likewise advance the welfare of the patients.

Based on these factors, the court found the restrictive ordinance bore no reasonable relation to

---

[10] Affirmed *per curiam*, 94 App DC 204 (214 F2d 282); certiorari denied, 348 US 898 (75 S Ct 217, 99 L ed 705).

the public safety, health, morals, or the general welfare:

" 'The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.' *Nectow* v. *City of Cambridge,* 277 US 183, 188 (48 S Ct 447, 448, 72 L ed 842, 844)." *American University* v. *Prentiss, supra,* at p 394.

Likewise in the record before us we can find no such relationship. The city offers that south of Kercheval the lots are somewhat larger and more valuable, but no evidence of such differences is apparent from the record.[11] This objective of the ordinance is somewhat tenuous compared to the benefits to the community of hospitals, schools, churches, and the like. The city suggests that one may operate a hospital north of Kercheval, but this is unreasonable in face of evidence that there is no land readily available north of Kercheval for such purpose. It is altogether difficult to find any direct and substantial relationship between the public weal and the "south of Kercheval" prohibition.

On the other side of the coin, the plaintiff has shown that it handles upwards of 10,000 emergency cases in a year and that its patients include residents from the city of Grosse Pointe as well as neighboring communities. Plaintiff has demonstrated that the hospital is overcrowded and usually maintains an in-patient waiting list. Other testimony disclosed that the hospital is in danger of losing its internship

---

[11] Plaintiff's expert city planner, Elmer Mueller, testified that from his observations he could discern no justification for the Kercheval division based on the character of the B district to the north and the B district to the south. In Mr. Mueller's words, the areas are "quite comparable."

and residency accreditation unless it expands. Additionally, there was testimony of the need for hospital beds in this area based on the published recommendations of the Greater Detroit Hospital Council.

Without further summarizing the testimony produced at trial, it is sufficient to say that the evidence produced by the plaintiff, if believed by the trial judge, amply supports the trial court's finding that the "south of Kercheval" zoning regulation (section 3.12) was unreasonable and bore no substantial relation to public health, safety, morals, or the general welfare.

Our decision should not be construed as prohibiting local government's reasonable regulation of hospitals and their location within the municipality's diverse districts, but in this case such regulation was not made to further development of a particular type of district; rather it cut across different districts. The infirmity in this case lies in the lack of relationship between the blanket "south of Kercheval" prohibition and any conditions in that area which would indicate a substantial relation to the public well-being. For the lack of such relationship, this superimposed ban is fatally defective as an improper exercise of statutory authority to zone. The relationship, if in fact one exists, must appear from the condition of the community as appears at the time, not from some future hypothetical set of facts. *Christine Building Company* v. *City of Troy, supra.*

Plaintiff has also challenged, as being arbitrary and unreasonable, the provisions of section 3.11(c)-(2) of the Grosse Pointe ordinances which require hospitals to have 1 off-street parking space per patient bed and 1 space for each 5 staff positions. Section 3.11 includes diverse types of uses including hos-

pitals and the requirements under each use are imposed uniformly throughout the city.

Plaintiff's sole argument against the validity of section 3.11(c)(2) is, as stated in its complaint: "Plaintiff is informed and believes that such off-street parking requirements for hospitals are in excess of similar requirements of most municipalities in Wayne county, Michigan."

It should be eminently clear that requirements for off-street parking bear a substantial relation to lessening congestion and traffic in the public streets as well as protecting residential owners throughout the city from the possibility of many cars parking at their curbs. The restrictions, unless their requirements are unreasonable, do bear a substantial relation to the public safety, health, morals, and welfare. *Uday* v. *City of Dearborn* (1959), 356 Mich 542. On its face, this requirement is valid. Plaintiff has not met its burden of coming forward with evidence that the requirements of section 3.11(c)(2) are unreasonable. Merely to say that it is believed to be higher than other Wayne county municipalities is not convincing and the argument addressed to this point merely asks this Court to invade the legislative function. *Brae Burn, Inc.,* v. *City of Bloomfield Hills, supra.*

The trial judge's finding that this section constituted a deprivation of property without due process of law is not supported by the record.

From the point of recognizing the validity of section 3.11(c)(2), plaintiff complains of the denial of its petition to rezone a certain parcel owned by it to allow for off-street parking. This parcel is 83 feet by 785 feet running north-south just adjacent to the hospital property proper. Residences line the length of the parcel on both sides with the backyards bordering on the parcel and the houses facing the

adjacent streets. The only access to the property
is from either end of the long rectangle.

When the hospital acquired this property in May,
1956, it was zoned residence B (footnote 1, *supra*)
which allowed "accessory uses customarily incident
to any of the above permitted uses." Hospitals were
one of the above permitted uses, subject, however,
to the "south of Kercheval" prohibition. Based on
our finding of invalidity of the Kercheval line, the
terms and provisions of the B district remain in
force in those districts so designated. In other
words, Bon Secours, by our above holding, remains
a permitted rather than a nonconforming use located
in B district.

The many petitions to rezone and the numerous
problems dealt with by the trial court have led to
apparent confusion on this appeal with respect to
this separate strip of land. We need not discuss the
question of validity of the parking ordinance in
conjunction with the plaintiff's claim of "confisca-
tion" or the claim that the narrow strip is "dead
land" by prohibiting the use of the parcel as parking.
The legitimate and legal use of this strip turns on
the uses permitted under a B district classification.
If hospitals were prohibited, there exists no show-
ing of justification to use the parcel as parking—
that is, unless no other legal use could be made.
As it is, however, hospitals are a permitted B use
and this parcel goes right along as an "accessory
use customarily incident" thereto.

The trial judge found section 3.15, imposing height
restrictions throughout the city, to be unconstitu-
tional and to bear no substantial relation to the
proper objectives of the police power. This finding
is erroneous.

The concept of building height restrictions is vir-
tually universally accepted as bearing a substantial

relation to public health, safety, morals and welfare. See *Village of Euclid* v. *Ambler Realty Company* (1926), 272 US 365 (47 S Ct 114, 71 L ed 303).[12] Again, the test of the validity of such restrictions is their reasonableness—that is, their relation to the promotion of the public good. On its face the ordinance in question here displays no infirmities and is in fact substantially identical to the ordinance discussed in *Taber* v. *City of Benton Harbor* (1937), 280 Mich 522, wherein the city itself was held bound by the height restriction.

We are unable to find any evidence on this record to justify the conclusion of unconstitutionality of the height restriction ordinance reached by the trial court. When reasonably related to the public good even so valuable an institution as a hospital must be subject to reasonable local regulations. *DeGaynor* v. *Dickinson County Memorial Hospital Board of Trustees* (1961), 363 Mich 428.

In summation we uphold the trial court's determination that the "use" ordinance prohibiting hospitals south of Kercheval is invalid. We further hold that the hospital may use its 83-foot strip of land for parking purposes as an accessory use normally incident to the operation of a hospital. Finally, we hold the ordinance amending the height restriction is valid. We do not pass upon the issue of whether the hospital should or should not come within the purview of that portion of Ordinance No 96, § 3.15, authorizing the council to approve the erection of a building of a height greater than 3 full stories or 36 feet above grade, since this issue is not before this Court on appeal.

No costs, neither party having prevailed in full.

McGREGOR and THORBURN, JJ., concurred.

---

[12] Also text and cases at 1 Rathkopf, The Law of Zoning and Planning, pp 34–12, 34–13.