IN THE MATTER OF: CERTIFICATE OF NEED FOR ASTON PARK HOSPITAL, INC.

No. 91

(Filed 26 January 1973)

Constitutional Law § 13; Hospitals § 2— statute requiring certificate of need for private hospital — unconstitutionality

The statute requiring a certificate of need from the Medical Care Commission in order to construct and operate a hospital or other medical care facility on private property with private funds, G.S. 90-291, constitutes a deprivation of liberty without due process of law in violation of Article I, § 19 of the Constitution of North Carolina, establishes a monopoly in existing hospitals contrary to the provisions of Article I, § 34 and grants to existing hospitals exclusive privileges forbidden by Article I, § 32.

APPEAL by Medical Care Commission from *Thornburg, J.*, at the 28 August 1972 Session of BUNCOMBE, heard prior to determination by the Court of Appeals.

Aston Park Hospital, Inc., hereinafter called Aston Park, a nonprofit corporation, filed with the North Carolina Medical Care Commission, hereinafter called the Commission, on 7 October 1971, its application for a certificate of need, pursuant to Article 21, Chapter 90 of the North Carolina General Statutes, for the construction of a general hospital of 200-bed capacity in the City of Asheville. For many years prior thereto, Aston Park owned and operated in Asheville, upon a tract of approxi-

mately one acre, a general hospital with a capacity of 50 beds. Its purpose is to discontinue the operation of this old plant and replace it with the new and larger hospital of modern design and equipment upon a tract of 69 acres acquired by it for this purpose in 1967 and now owned by it in fee simple.

After a hearing, the Commission entered its order denying the application for a certificate of need on the ground that "the insertion into the Ashville health community of a new, 200-bed general hospital would be an unnecessary and weakening duplication of services and undesirable dilution of physicians' time in treating patients at widely separated hospitals." Among other things, the Commission found that there are presently in operation seven general hospitals in the Commission's multi-county planning area B, three of which (including Aston Park's existing plant) are located in the City of Asheville, the total bed capacity of the seven hospitals being 978, and that of the three hospitals in Asheville being 641. The Commission further found that 94 additional beds should be added to the hospital facilities in the City of Asheville by 1977, but that 90 of these beds would be added by St. Joseph's Hospital pursuant to its preliminary plans filed with the Commission prior to 21 July 1971 and approved by the Commission. Thus, the additional bed capacity to be provided by Aston Park's proposed construction would result in the city's having a hospital bed capacity in excess of that which the Commission concluded is needed.

Aston Park proposes to build its contemplated new plant without the use of any public funds, State, Federal or local. It owns the unencumbered proposed site and has available to it, from trust funds and contributions, approximately $1,175,000. It has a firm commitment for a loan from a nongovernmental source of the remainder of the total cost of constructing and equipping the new hospital.

The approval by the Commission of the proposed addition of the 90-bed capacity to St. Joseph's Hospital was granted without a hearing on the ground that, since the preliminary plans therefor were filed with the Commission prior to 21 July 1971, the effective date of G.S. Chapter 90, Article 21, the statutory requirement of a certificate of need was not applicable.

Upon denial of its application for a certificate of need, Aston Park petitioned the superior court for review. The court

adjudged the order of the Commission invalid for the reason that G.S. 90-289 and G.S. 90-291 are in violation of the North Carolina Constitution, Article I, §§ 1, 19, 32 and 34 and Article II, § 1.

From that judgment the Commission appealed.

*Attorney General Morgan and Assistant Attorney General Denson for Medical Care Commission.*

*Herbert L. Hyde for Aston Park Hospital.*

*Hollowell, Ragsdale & Kirschbaum, P.A., by Edward E. Hollowell for North Carolina Hospital Association, Inc., Amicus Curiae.*

LAKE, Justice.

Article 21, Chapter 90 of the General Statutes, G.S. 90-289 to G.S. 90-291, was enacted and took effect on 21 July 1971. G.S. 90-289 provides:

> *"Orderly development of medical facilities.*—The General Assembly of North Carolina declares that it is the public policy of the State to encourage the necessary and adequate development of health and medical care facilities and that this development shall be accomplished in a manner which is orderly, timely, economical, and without unnecessary duplication of these facilities."

Among other definitions not material to this appeal, G.S. 90-290 defines "medical care facility" to include hospitals. The provisions of G.S. 90-291, material to this appeal, are as follows:

> *"Certificate of need.*—(a) Any other provisions of law to the contrary notwithstanding, such State agencies as administer licensing laws applicable to medical care facilities shall, as a precondition to issuing or continuing the license applied for, make a 'determination of need' with respect to any new construction, construction of additional bed capacity or conversion of existing bed capacity for which a license is requested.

> "(b) Any proposed medical care facility, desiring to be licensed by a State licensing agency, shall make application for a certificate of need, as required by this Article, when such facility proposes new construction. Any existing

In re Hospital

medical care facility need not apply for a certificate of need except when the facility proposes new construction, construction of additional bed capacity, or the conversion of existing bed capacity to a different license category, except outpatient and emergency services. * * *

"(c) Certificates of need shall be issued or denied, suspended, revoked or reinstated by such agencies having responsibility for licensing medical care facilities in accordance with law and rules and regulations of the licensing agency. * * *

"No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide new or additional inpatient facilities in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health services. In making such determinations, there shall be taken into consideration

(1) The size, composition and growth of the population of the area to be served;

(2) The number of existing and planned facilities of similar types;

(3) The extent of utilization of existing facilities; and

(4) The availability of facilities or service which may serve as alternatives or substitutes.

*       *       *

"(e) Construction of a new medical care facility or expansion of an existing facility to gain additional bed capacity shall not be instituted or commenced after the effective date of this Article except upon application for and receipt of a certificate of need as provided herein: Provided that in any case which, prior to July 21, 1971, there has been proposed the construction of a new facility or the expansion of bed capacity of an existing facility and preliminary plans have been submitted to a State licensing such proposed projects are exempt to the extent of initial construction or expansion provided for in such preliminary plans from the provisions of this Article.

*       *       *

"(h) * * * Decisions concerning a certificate of need shall be appealable to, or subject to judicial review in, the courts as provided by law with regard to licensing decisions of any licensing agency.

"(i) The boards or commissions of State licensing agencies shall have authority to adopt policies, rules and regulations in order to effectuate the provisions and purposes of this Article."

The superior court concluded that the following provisions of the Constitution of North Carolina are violated by one or more of these statutory provisions:

*Article I, § 1: "The equality and rights of persons.* We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."

*Article I, § 19: "Law of the land; equal protection of the laws.* No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."

*Article I, § 32: "Exclusive emoluments.* No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

*Article I, § 34: "Perpetuities and monopolies.* Perpetuities.and monopolies are contrary to the genius of a free state and shall not be allowed."

*Article II, § 1: "Legislative power.* The legislative power of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives."

Upon this appeal we do not have before us any question as to the authority of the Legislature to require one who proposes to operate a hospital, nursing home or other facility for the

care of sick people, to obtain from the appropriate State licensing board a license or permit. Nor do we have before us any question as to the authority of the Legislature to declare that such permit shall be denied unless the applicant meets reasonable minimum specifications concerning the design and construction of the building, its equipment, sanitation and maintenance. See: G.S. 131-126.2 to G.S. 131-126.4 and G.S. 130-170; 40 AM. JUR. 2d, Hospitals, § 4; 41 C.J.S., Hospitals, § 2; Annot., 97 A.L.R. 2d 1188. Nothing whatever in this record suggests that the hospital which Aston Park proposes to construct will not be adequate in design, structure or equipment or that it will not be maintained in accordance with the highest standards of sanitation and patient care. The Commission has made no objection to Aston Park's continuing to operate its present plant. Nothing in the record suggests that the proposed hospital will not be superior to the present plant in all these respects.

The present appeal raises no question concerning the power of the Legislature, through an appropriate board or commission, to limit the use of public funds, or other governmental aid, State or local, either in the construction or in the maintenance of a hospital, nursing home or other facility for the care of sick people, to institutions for which the appropriate State board or commission finds, by reasonable and appropriate procedures, an existing need in view of existing facilities operated for such purpose. See, *Williamson v. Snow,* 239 N.C. 493, 80 S.E. 2d 262. This appeal raises no question concerning the power of the Legislature to require the applicant for such public assistance to comply with any reasonable requirements concerning construction, operation or maintenance of such institution. See, G.S. 131-120. Aston Park seeks no grant of public funds, Federal, State or local. It proposes to construct its new facility upon property which it now owns in fee simple and to build and operate it with the expenditure of the income or principal of trust funds, established by private benefactors for its benefit, contributions received from private sources and charges to its patients.

Upon this appeal no question arises as to the power of the Legislature to confer upon cities and towns the authority to enact reasonable zoning ordinances limiting the construction and operation of a hospital, nursing home or other facility for the care of sick people to certain areas, or reasonably to regulate the location and operation of an institution for the care of per-

sons afflicted with contagious diseases or disorders of the mind. See: *State v. Tenant,* 110 N.C. 609, 14 S.E. 387; *Sisters of Bon Secours Hospital v. City of Grosse Pointe,* 8 Mich. App. 342, 154 N.W. 2d 644, 27 A.L.R. 3d 1007; Annot., 27 A.L.R. 3d 1022, 1028. Nothing in the record before us suggests that the 69 acre tract on which Aston Park proposes to construct its new hospital is not a suitable location therefor.

Nothing in this appeal presents any question concerning the power of the Legislature to require a hospital, nursing home or other facility for the care of sick people to be staffed with a reasonably adequate number of doctors, nurses, technicians and other personnel or to require that such personnel have the training and qualifications reasonably necessary to assure proper care for its patients.

In the present case, the Commission claims and the statute purports to confer upon it the authority to forbid the construction, with private funds and suitable materials, upon private property suitably located, of a well planned hospital which is to be adequately equipped and staffed with a sufficient number of well trained personnel in all categories, the sole reason of such prohibition being that, in the opinion of the Commission, there are now in the area hospitals with bed capacity sufficient to meet the needs of the population. Aston Park, which desires so to engage in the business of caring for sick, injured and infirm people, contends that this is in excess of the constitutional power of the Legislature. We agree.

In support of the statute and of its action thereunder, the Medical Care Commission contends that there is a shortage of doctors and of adequately trained hospital staff workers, especially nurses, that excess hospital construction will spread the available hospital employees more thinly and thus endanger adequate care of the patients, that the time of the doctors can be used more efficiently if the total bed capacity is concentrated, that excess bed capacity will result in a substantial amount of vacant rooms and beds, that there are certain overhead costs which increase with the number of beds whether occupied or vacant, that the overhead cost of vacant beds must be absorbed by the patients in the occupied beds and, consequently, the effect of excess hospital bed capacity will be less efficient service to patients at greater cost.

The Appellate Division of the Supreme Court of New York found a like argument persuasive. *Attoma v. State Department*

*of Social Welfare,* 26 A.D. 2d 12, 270 N.Y.S. 2d 167. Notwithstanding our great respect for that court and for the opinion of the Medical Care Commission, we do not find the argument convincing. It is a matter of common knowledge that in many communities hospital costs have spiralled upward in recent years while patients desiring hospitalization have been unable to find promptly a vacant hospital room.

Compulsory curtailment of facilities for the care of the sick is not a reasonable choice of a remedy for a shortage of trained hospital personnel, nurses and doctors. In any event, we hold that Article I, § 19, of the Constitution of this State does not permit the Legislature to authorize a State board or commission to forbid persons, with the use of their own property and funds, to construct adequate facilities and to employ therein a licensed professional and quasi-professional staff for the treatment of sick people, who desire the service, merely because to do so endangers the ability of other, established hospitals to keep all their beds occupied.

As Mr. Justice Harlan, speaking for the Supreme Court of the United States, observed in *Northern Securities Company v. United States,* 193 U.S. 197, 351, 24 S.Ct. 436, 48 L.Ed. 679, "It is the history of monopolies in this country and in England that predictions of ruin are habitually made by them when it is attempted, by legislation, to restrain their operations and to protect the public against their exactions." Mr. Justice Harlan was, of course, speaking of monopolies created by private ingenuity and operated for profit and of legislation designed to curb their economic stranglehold upon the public. His observation, however, applies also to monopolies created by statute though not operated for profit, as such. In the ordinary businesses it has been the common experience in America that competition is an incentive to lower prices, better service and more efficient management. The record discloses no reason to suppose that the same is not true in the practice of the healing arts and in the operation of institutions for that purpose. If, however, competition results in more courteous and attentive service and a more diligent search for improved methods, these benefits may well be deemed to balance, at least, the detriment of higher prices. While in many respects a hospital is not comparable to an ordinary business establishment, we know of no reason to doubt its similarity thereto in its response to the spur of competition.

**In re Hospital**

In the public utility businesses competition, deemed unnecessary, is curtailed by the requirement that one desiring to engage in such business procure from the Utilities Commission a certificate of public convenience and necessity. G.S. 62-110. However, in those fields the State has undertaken to protect the public from the customary consequences of monopoly by making the rates and services of the certificate holder subject to regulation and control by the Utilities Commission. G.S. 62-32, G.S. 62-42, G.S. 62-130. No comparable power to regulate hospital rates and services has been given to the Medical Care Commission.

Any exercise by the State of its police power is, of course, a deprivation of liberty. Whether it is a violation of the Law of the Land Clause or a valid exercise of the police power is a question of degree and of reasonableness in relation to the public good likely to result from it. To deny a person, association or corporation the right to engage in a business, otherwise lawful, is a far greater restriction upon his or its liberty than to deny the right to charge in that business whatever prices the owner sees fit to charge for service. Consequently, such a deprivation of his liberty requires a substantially greater likelihood of benefit to the public in order to enable it to survive his attack based upon Article I, § 19 of the Constitution of North Carolina.

As Justice Higgins said in *Roller v. Allen*, 245 N.C. 516, 518, 96 S.E. 2d 851, "The right to work and to earn a livelihood is a property right that cannot be taken away except under the police power of the State in the paramount public interest for reasons of health, safety, morals, or public welfare." In discussing the extent of the police power of a state under the comparable Due Process Clause of the Fourteenth Amendment to the Federal Constitution, the Supreme Court of the United States said in *Lawton v. Steele*, 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385:

> "To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with

private business, or impose unusual and unnecessary restrictions upon lawful occupations."

Obviously, the police power extends to reasonable regulation of hospitals, both as to their construction and as to their operation. However, the fact that the business of a hospital is, per se, related to the public health does not mean that every regulation of its activities falls within the scope of the police power. See, *New State Ice Co. v. Liebmann,* 285 U.S. 262, 273, 52 S.Ct. 371, 76 L.Ed. 747. As Justice Ervin said in *State v. Ballance,* 229 N.C. 764, 769, 51 S.E. 2d 731, 7 A.L.R. 2d 407: "If a statute is to be sustained as a legitimate exercise of the police power, it must have a rational, real, or substantial relation to the public health, morals, order, or safety, or the general welfare. In brief, it must be reasonably necessary to promote the accomplishment of a public good, or to prevent the infliction of a public harm." See also, *Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18. In *State v. Harris,* 216 N.C. 746, 6 S.E. 2d 854, 128 A.L.R. 658, Justice Seawell said, at page 759: "But the power to regulate a business or occupation does not necessarily include the power to exclude persons from engaging in it. * * * When this field has been reached, the police power is severely curtailed. * * * In one respect authorities are agreed: It is necessary to a valid exercise of the police power that the proposed restriction have a reasonable and substantial relation to the evil it purports to remedy."

We find no such reasonable relation between the denial of the right of a person, association or corporation to construct and operate upon his or its own property, with his or its own funds, an adequately staffed and equipped hospital and the promotion of the public health. Consequently, we hold that G.S. 90-291 is a deprivation of liberty without due process of law, in violation of Article I, § 19 of the Constitution of North Carolina insofar as it denies Aston Park the right to construct and operate its proposed hospital except upon the issuance to it of a certificate of need.

Such requirement establishes a monopoly in the existing hospitals contrary to the provisions of Article I, § 34 of the Constitution of North Carolina and is a grant to them of exclusive privileges forbidden by Article I, § 32.

In so holding we do not substitute our judgment for that of the Medical Care Commission as to the extent, if any, of the

present need for additional hospital bed capacity in the City of Asheville. It may prove true that Aston Park will not be able to recruit the professional and quasi-professional staff necessary to enable it to operate the proposed hospital so that its revenues will be sufficient to meet its expenses. Thus, the proposed hospital may never be able to commence operations or, if it commences them, it may be compelled for financial reasons to close. The Constitution of this State does not, however, permit the Legislature to confer upon the Medical Care Commission the power of a guardian to protect Aston Park from possible bad financial judgment. Nor does it permit the Legislature to grant to the Medical Care Commission authority to exclude Aston Park from this field of service in order to protect existing hospitals from competition otherwise legitimate.

The statutory requirement of a certificate of need being beyond the authority of the Legislature under the Constitution of this State, hereinabove discussed, we do not reach, upon this appeal, either the interesting question raised by Aston Park as to whether it has been denied the equal protection of the laws, in violation of Article I, § 19 of the Constitution of North Carolina by the denial of its application and the issuance of a permit to St. Joseph's Hospital under the provision of G.S. 90-291(e), or the question raised by it as to whether certain terms of the statute are so vague as to constitute an unauthorized delegation of legislative power to the Commission.

Affirmed.