RECREATIONAL VEHICLE UNITED CITIZENS ASSOCIATION v
CITY OF STERLING HEIGHTS

Docket No. 93132. Submitted October 13, 1987, at Detroit. Decided
December 9, 1987.

The planning commission for defendant, the City of Sterling
Heights, held a hearing and subsequently recommended to the
city that the City of Sterling Heights' Recreational Vehicle
Parking and Storage Ordinance be adopted. Following consider-
ation of the ordinance by the city council, an ad hoc committee
was appointed to study the ordinance and recommend a com-
promise. Following the committee's recommendations, the city
council adopted the ordinance. Plaintiffs, Recreational Vehicle
United Citizens Association and others, then brought an action
in the Macomb Circuit Court alleging that the ordinance was
unconstitutional. Both sides moved for summary disposition.
The trial court, Kathleen Jansen, J., ruled that the ordinance
was a regulatory rather than a zoning ordinance and granted
defendant's motion. Plaintiffs appeal.

The Court of Appeals *held:*

1. Insofar as defendant's ordinance regulates the storage or
parking of plaintiffs' vehicles without reference to a public
street or sidewalk, it is a zoning ordinance. Where the ordi-
nance regulates the parking of vehicles on the city's streets or
sidewalks, the ordinance is regulatory.

2. The city council complied with the provisions of MCL
125.584; MSA 5.2934 in passing the ordinance in question. The
procedure employed by the city was proper.

3. The ordinance does not amount to a taking since it permits
reasonable alternative uses for plaintiffs' properties.

4. The ordinance does not violate the rights to due process

REFERENCES

Am Jur 2d, Constitutional Law §§ 804 *et seq.*

Am Jur 2d, Municipal Corporations, Counties and Other Political
Subdivisions §§ 343 *et seq.*

Am Jur 2d, Zoning and Planning §§ 25 *et seq.*

Supreme Court's views as to constitutionality of residential zoning
restrictions. 52 L Ed 2d 863.

Validity of zoning ordinances prohibiting or regulating outside
storage of house trailers, motor homes, campers, vans, and the
like, in residential neighborhoods. 95 ALR3d 378.

and equal protection. The ordinance bears a reasonable relationship to a permissible legislative objective.

5. The city council may act to prevent a perceived harm and may attack the same problem in more than one statute. The city council was not required to deal with every aspect of the particular problem at the same time and may proceed in a piecemeal fashion.

Affirmed.

1. MUNICIPAL CORPORATIONS — ZONING — ORDINANCES.

A city council complied with the statute regarding the enactment of zoning ordinances where the council referred the matter to the city's planning commission, which held a public hearing on the matter and thereafter recommended to the council that the ordinance be adopted, and where the council thereafter appointed an ad hoc committee to advise it, held further public hearings following the committee's recommendation, and then adopted the ordinance with certain amendments (MCL 125.584, subds [2] and [3]; MSA 5.2934, subds [2] and [3]).

2. ZONING — CONSTITUTIONAL LAW — TAKING OF PROPERTY.

An ordinance which is both a regulatory and a zoning ordinance may be determined not to amount to a taking of property where it permits reasonable alternative uses for the properties affected thereby (US Const, Am XIV; Const 1963, art 1, § 17).

3. CONSTITUTIONAL LAW — DUE PROCESS.

The test to determine whether legislation meets a due process challenge is whether that legislation bears a reasonable relationship to a permissible legislative objective.

4. MUNICIPAL CORPORATIONS — ZONING.

A zoning ordinance must advance a reasonable governmental interest and may not be purely arbitrary or capricious, or result in an unfounded exclusion of other types of legitimate land use.

5. ZONING — PRESUMPTION OF VALIDITY.

A zoning ordinance is presumed to be valid and the person attacking it has the burden of proving that it is an arbitrary, unreasonable restriction upon his use of his own property.

6. MUNICIPAL CORPORATIONS — ORDINANCES — PERCEIVED SAFETY HAZARDS.

A city council may act on a perceived safety hazard when passing an ordinance.

7. MUNICIPAL CORPORATIONS — ORDINANCES.

A city council may attack the same problem in more than one ordinance and in a piecemeal fashion.

8. MUNICIPAL CORPORATIONS — ORDINANCES.

Aesthetics is a reasonable governmental interest; however, by itself, it is insufficient to support an ordinance.

9. CONSTITUTIONAL LAW — EQUAL PROTECTION.

The equal protection clause is concerned with acts of invidious discrimination among classes and not with mere acts of unequal enforcement which may be the result of erroneous or even arbitrary administration of facially-neutral ordinances (US Const, Am XIV; Const 1963, art 1, § 2).

*Jerald R. Lovell* and *David Griem,* for plaintiffs.

*O'Reilly, Rancilio, Nitz, Andrews & Turnbull, P.C.* (by *Paul J. O'Reilly* and *Bert T. Ross*), for defendant.

Before: J. H. GILLIS, P.J., and GRIBBS and J. C. TIMMS,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the trial court's order granting defendant's motion for summary disposition. MCR 2.116(C)(10). We affirm the trial court's order, although we conclude that its reasoning was erroneous in part.

The challenged ordinance is the City of Sterling Heights' Recreational Vehicle Parking and Storage Ordinance (RVPSO) which regulates the parking and storage of recreational vehicles, enclosed campers, boats, snowmobiles, and utility trailers upon public and private property in a single-family residential area. Sterling Heights Ordinance, ch 32, art XIII, §§ 32-381—32-388. This ordinance was the result of over twelve years of debate between plaintiffs and defendant. In 1980, the matter was eventually referred to defendant's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

planning commission. The commission scheduled a public hearing on the proposed ordinance on February 5, 1981. Following comments from the audience, the planning commission adopted the proposed ordinance, absent a height restriction, and made a minor word change in it. On February 24, 1981, the planning commission's secretary sent a letter to the city council explaining that the commission had voted to recommend adoption of the proposed ordinance. Minutes from the February 19 meeting were attached to the letter.

Plaintiffs concede that in March, 1981, the planning commission presented the city council with the proposed ordinance. Because audience members objected to the proposed ordinance, the matter was apparently rescheduled for April's meeting. At that time, a vote on the proposed ordinance was again rescheduled.

At the next city council meeting on May 20, 1981, the city council voted four to three to appoint an ad hoc committee composed of five recreational vehicle owners and five nonrecreational vehicle owners to study the proposed ordinance and reach a compromise. On November 16, 1981, the ad hoc committee submitted a proposed ordinance to the city council. The committee's proposal contained a provision which restricted a homeowner in a single-family residential area from parking his recreational vehicle on his property within ten feet of a public sidewalk and within nine feet of his front lot line where no sidewalk existed. This provision was unacceptable to individuals who had sixty-foot lots because it would effectively prevent them from parking their vehicles on their property.

On November 16, 1982, the city council referred the proposed ordinance back to the ad hoc committee for reconsideration. On December 3, 1982, the

ad hoc committee reported back to the city council. The committee revised the objected-to provision to read:

> The unit shall be parked or stored no closer than two (2) feet from any public sidewalk; or no closer than one (1) foot from the front lot line where no public sidewalk exists.

On January 3, 1983, the city council held another public hearing on the matter. The following evening, the city council rejected the ad hoc committee's original proposal and, instead, approved eight- and seven-foot limitations. RVPSO became effective on April 12, 1983.

On April 7, 1983, plaintiffs filed their original complaint with the circuit court, claiming the RVPSO was unconstitutional. Plaintiffs later amended their complaint to allege that RVPSO was a zoning regulation and, therefore, improperly passed under MCL 125.584; MSA 5.2934. Defendant answered that RVPSO was not a zoning ordinance, but a properly enacted regulatory ordinance.

Both parties moved for summary disposition. As noted above, the trial court granted defendant's motion. The trial court ruled that RVPSO was a regulatory rather than a zoning ordinance because the ordinance did not regulate land or the structures thereon; instead, it regulated the conduct of individuals who owned land, as to the storage and parking of their recreational vehicles. Moreover, the trial court rejected plaintiffs' due process, equal protection and taking arguments.

In *Belanger v Chesterfield Twp,* 96 Mich App 539; 293 NW2d 622 (1980), rev'd in part on other grounds and remanded 409 Mich 941 (1980), the plaintiff challenged the following ordinance:

> Subject to the provisions of Act 300, Public Acts of 1949, as amended, the parking of a motor vehicle, the gross vehicle weight of which exceeds twenty thousand (20,000) pounds, in a residential area is prohibited. [*Belanger, supra,* p 540.]

The plaintiffs claimed that the ordinance was unconstitutional because it permitted the parking of large vehicles, but prohibited the parking of large vehicles capable of carrying great weight and because it permitted the latter vehicles in some residential areas but not others. This Court held:

> The regulation of all *street* parking is within the scope of defendants' regulatory police power. It bears a substantial relation to the public health, welfare, safety and morals and, therefore, constitutes a legitimate government purpose. *Uday v Dearborn,* 356 Mich 542; 96 NW2d 775 (1959); *Sisters of Bon Secours Hospital v Grosse Pointe,* 8 Mich App 342, 358, 359; 154 NW2d 644 (1967).
>
> * * *
>
> The parking of large, heavy vehicles on *private* residential property may cause impeded ingress and egress by emergency vehicles. It can create unsafe traffic conditions for traffic and pedestrians. Furthermore, the vehicle's noise level, exhaust emissions and appearance may impair public health and welfare. It is reasonable for a municipality to determine that those subdivisions with the greatest number of residents or closely situated lots are the most vulnerable to such harm. The ordinance is not confiscatory as it permits alternative uses of the property.
>
> A legislative body is not constrained to adopt an all or nothing approach. In an area where there is a perceived need for experimentation, it may proceed in a piecemeal fashion. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 672; 232 NW2d 636 (1975). We find that the ordinance bears a rational and substantial relation to the

public health, safety and welfare. [*Belanger, supra,* pp 541-542.]

While defendant relies on *Belanger, supra,* to support its claim, we note that *Uday, supra,* and *Sisters of Bon Secours Hospital, supra,* involved zoning ordinances regulating off-street parking. After reviewing the various cases discussed in Anno: *Validity of zoning ordinances prohibiting or regulating outside storage of house trailers, motor homes, campers, vans, and the like, in residential neighborhoods,* 95 ALR3d 378, however, we conclude that, insofar as defendant's ordinance regulates the storage or parking of plaintiffs' vehicles without reference to a public street or sidewalk, it is a zoning ordinance. On the other hand, where defendant's ordinance regulates the parking of vehicles on defendant's streets or sidewalks, the ordinance is regulatory.

Insofar as defendant's ordinance is a zoning ordinance, it must be passed in accordance with MCL 125.584; MSA 5.2934, which provides in part:

(2) The legislative body of a city or village, unless otherwise provided by charter, may appoint a commission to recommend in the first instance the boundaries of districts and appropriate regulations to be enforced in the districts. If a city or village has a planning commission, that commission shall be appointed to perform the duties set forth in this section. The commission shall make a tentative report and hold at least 1 public hearing before submitting its final report to the legislative body. A summary of the comments submitted at the public hearing shall be transmitted with the report of the commission to the legislative body. The legislative body may hold additional public hearings if it considers it necessary, or as may be required by charter.

(3) In a city or village having a commission

appointed to recommend zoning requirements, the legislative body shall not in the first instance determine the boundaries of districts nor impose regulations until after the final report of the commission, nor shall the ordinance or maps be amended after they are adopted in the first instance until the proposed amendment has been submitted to the commission and it has held at least 1 hearing and made report thereon. In either case the legislative body may adopt the ordinance and maps, with or without amendments, after receipt of the commission's report, or refer the ordinance and maps again to the commission for a further report.

Plaintiffs claim defendant violated the statute by appointing its ad hoc committee and having it recommend a final form for the ordinance. We believe defendant's city council complied with MCL 125.584; MSA 5.2934. Plaintiffs concede that defendant's city council referred the matter to the planning commission. The planning commission held a public hearing on the matter. As evidenced by the letter sent to the defendant's city council, the planning commission's secretary forwarded the planning commission's recommendation that the proposed ordinance be adopted to the city council and attached excerpts from the public hearing for its information. We fail to see how this was not a final report for purposes of MCL 125.584(2); MSA 5.2934(2). At that point, the city council was free to adopt the ordinance, with or without amendments, or refer the ordinance again to the planning commission for a further report. MCL 125.584(3); MSA 5.2934(3). Moreover, the city council could hold further public hearings if it considered them necessary. MCL 125.584(2); MSA 5.2934(2). In this case, the council appointed an ad hoc committee to advise it, held further public hearings and, then, adopted the ordinance as

amended. This was proper. MCL 125.584, subds (2) and (3); MSA 5.2934, subds (2) and (3).

We now turn to plaintiffs' constitutional arguments. Plaintiffs claim that by enacting RVPSO defendant confiscated its members' land and, therefore, had to pay them just compensation. US Const, Am XIV; Const 1963, art 1, § 17. We agree with the trial court that RVPSO does not amount to a taking because it permits reasonable alternative uses for plaintiffs' properties. See, e.g., *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 566, 572-573; 398 NW2d 393 (1986); *Belanger, supra*, p 542.

Plaintiffs also claim that RVPSO violates the rights to due process and equal protection. US Const, Am XIV; Const 1963, art 1, §§ 2, 17. The test to determine whether legislation meets a due process challenge is whether that legislation bears a reasonable relationship to a permissible legislative objective. *West v Rollhaven Skating Arena*, 105 Mich App 100, 103; 306 NW2d 408 (1981). A zoning ordinance must advance a reasonable governmental interest and may not be purely arbitrary or capricious, or result in an unfounded exclusion of other types of legitimate land use. *Kropf v Sterling Heights*, 391 Mich 139, 158; 215 NW2d 179 (1974). A zoning ordinance is presumed to be valid and the person attacking it has the burden of proving that it is an arbitrary, unreasonable restriction upon his use of his own property. *Id.*

RVPSO lists its purpose as promoting the public's safety, health, and welfare by (1) reducing traffic hazards, (2) maintaining healthful standards of sanitation, (3) maintaining unobstructed access to public sidewalks, thoroughfares and right-of-ways, and (4) preserving the residential character of residential neighborhoods. Richard Schoenherr, de-

fendant's director of planning, submitted an affidavit enumerating the aforementioned purposes as well as the following purposes for drafting RVPSO: (1) to provide access to residential structures in case of police, fire or health emergencies; (2) to control and regulate potential or actual fire hazards; (3) to reduce harmful noises, fumes and odors; (4) to prevent reduction of residential property values; (5) to control crime in residential areas; (6) to control overcrowding of land in residential areas; (7) to allow residents to obtain adequate access to light, air and sunshine; and (8) to provide for adequate parking in residential neighborhoods.

Plaintiffs claim that there is no safety hazard posed by the vehicles enumerated in RVPSO. While police officers claimed that they did not recall any accidents where recreational vehicles were at fault because they obstructed a pedestrian's or a driver's vision, one councilman stated that he had received calls from two people who had been involved in accidents or near accidents when children suddenly appeared from behind recreational vehicles. We agree with the trial court that the city council may act on a perceived safety hazard when passing an ordinance. See, e.g., *In re Contempt of Stone,* 154 Mich App 121, 128; 397 NW2d 244 (1986), lv den 426 Mich 854 (1986). Protecting the public safety by reducing traffic hazards is a legitimate governmental interest and prohibiting recreational vehicles from parking on public streets in a residential area, where more children are likely to be found, is reasonably related to such purpose.

Plaintiffs further claim that RVPSO will not promote sanitation absent proof that residents live in their recreational vehicles. Moreover, plaintiff notes that defendant already has sanitation standards which must be complied with. Again, we

believe that the city council may act to prevent a perceived harm. *Id.* Additionally, we agree with defendant that it may attack the same problem in more than one ordinance.

Plaintiffs also contend that defendant's claim that RVPSO will maintain unobstructed access to sidewalks, thoroughfares, and right-of-ways is without merit because there is a general ordinance which regulates the parking of all vehicles. Again, defendant's city council was not limited from attacking the same problem by two ordinances.

Plaintiffs finally allege that aesthetics may not be the sole reason for drafting an ordinance. *Ottawa County Farms, Inc v Polkton Twp,* 131 Mich App 222, 229; 345 NW2d 672 (1983), lv den 419 Mich 892 (1984). While aesthetics is a reasonable governmental interest, we agree with plaintiffs that, by itself, it is insufficient to support an ordinance. *Gackler, supra,* p 572; *Ottawa County Farms, supra,* p 229. Yet, both RVPSO itself as well as Schoenherr's affidavit list several other ways in which RVPSO is rationally related to legitimate governmental interests. For these reasons, we reject plaintiffs' due process challenge. *Kropf, supra,* p 158; *West, supra.*

We also reject plaintiffs' claim that their right to equal protection was violated because the classification drawn by defendant's city council was not rationally related to a legitimate governmental purpose. *In re Contempt of Stone, supra,* p 127, quoting *Fox v Employment Security Comm,* 379 Mich 579, 588; 153 NW2d 644 (1967). In particular, plaintiffs claim that vans, pickup trucks, and station wagons all pose similar problems and are not regulated under RVPSO. Plaintiffs note that three vans parked end-to-end pose the same problem as a single recreational vehicle. See, e.g., *People v Palazzolo,* 62 Mich App 140; 233 NW2d 216 (1975),

lv den sub nom *Ferndale v Palazzolo,* 395 Mich
807 (1975). We disagree with plaintiffs' contention
that the items enumerated in RVPSO are similar to
those vehicles more commonly used for day-to-day
transportation. In any event, the governing body is
not required to deal with every aspect of a particu-
lar problem at the same time; it may proceed in a
piecemeal fashion. *In re Contempt of Stone, supra,*
p 127; *Belanger, supra,* p 542.

Plaintiffs further contend that there was no
rational basis for distinguishing between a single-
family residential area and a multi-unit dwelling
area. We agree with the trial court that the city
council could have properly distinguished these
two types of developments. Again, we note that
the city council was not required to take an all-or-
nothing approach to the problem presented. *Id.*

Finally, plaintiffs claim that because RVPSO will
be enforced upon a complaint basis only it will be
selectively enforced in violation of its members'
right to equal protection. We agree with the trial
court that plaintiffs' claim of selective enforcement
is speculative. In any event, the equal protection
clause is concerned with acts of invidious discrimi-
nation among classes and not with mere acts of
unequal enforcement which may be the result of
erroneous or even arbitrary administration of fa-
cially-neutral ordinances. See, e.g., *Wundsam v
Gilna,* 97 Ill App 3d 569, 578; 52 Ill Dec 900; 422
NE2d 1109 (1981), app den 85 Ill 2d 576 (1981).

Hence, while we disagree with the trial court
that RVPSO was entirely a regulatory ordinance, we
affirm the trial court's order as reaching the right
result although, in part, for the wrong reason.
*Warren v Howlett,* 148 Mich App 417, 426; 383
NW2d 636 (1986).

Affirmed.