*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ASSOCIATED BUILDERS AND CONTRACTORS
GREATER MICHIGAN CHAPTER,

        Plaintiff-Appellee,

v

CHARTER TOWNSHIP OF MERIDIAN,

        Defendant-Appellant.

FOR PUBLICATION
December 8, 2022
9:00 a.m.

No. 359027
Ingham Circuit Court
LC No. 21-000206-CZ

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

SHAPIRO, J.

This case arises from defendant Meridian Township adopting "Guidelines" that require employers working on Township contracts to pay "prevailing wages" and fringe benefits. The trial court held that the Guidelines violate the Local Government Labor Regulatory Limitation Act ("LGLRLA" or "the Act"), MCL 123.1381 *et seq.*, and the Township appeals by right. For the reasons stated in this opinion, we affirm the trial court's ruling that the Guidelines fall within the scope of the LGLRLA's prohibitions. Local governments may contract with bidders who pay a prevailing wage and may consider wage levels when deciding which bid to accept as to a particular contract, but they may not, as Meridian has done, adopt a blanket policy effectively barring bid awards to companies that do not pay prevailing wages.

## I. BACKGROUND

The LGLRLA became effective on June 30, 2015, with the passage of 2015 PA 105. Most relevant to this case, the Act provides:

> A local governmental body shall not adopt, enforce, or administer an ordinance, local policy, or local resolution requiring an employer to pay to an employee a wage or fringe benefit based on wage and fringe benefit rates prevailing in the locality. This section does not apply to state projects subject to 1965 PA 166, MCL 408.551 to 408.558. [MCL 123.1386.]

-1-

On March 16, 2021, the Meridian Township Board adopted "Guidelines," which provide in relevant part as follows:

> Any voluntary contract, agreement, understanding, or other arrangement in a total amount over $50,000, whether oral or written, between the Township and any contractor that employs craftsmen, mechanics, or laborers working directly on the site of any construction, maintenance, repair, or remodeling of any Township building or part thereof or any Township sewer or water line or part thereof will provide that such craftsmen, mechanics, and laborers working on the Township's work site will receive at least the prevailing wages and fringe benefits of the Building Trades Department for corresponding classes of craftsmen, mechanics, and laborers as determined and published by the United States Department of Labor for the Ingham County area.

> \* \* \*

> These Guidelines are intended to govern all voluntary contracts, agreements, understandings, or arrangements for construction, maintenance, or repair services provided directly to the Township, whether arising from competitive bidding or any other acceptable method of purchasing construction services. The Township Manager will post the prevailing wages and fringe benefits that are in effect from time to time at an appropriate place in the Township Hall. The Township Manager will review and report to the Township Board whether these Guidelines are being followed in all voluntary contracts, agreements, understandings, or arrangements for Township construction, maintenance, or repair services.

On April 5, 2021, plaintiff, a trade association, filed a complaint requesting that the trial court declare the Guidelines null and void for violation of the LGLRLA.

The Township moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim). It argued that the LGLRLA only prohibits a local government from enacting prevailing-wage regulations that apply generally to all employers. According to the Township, the Act does not limit a local government's authority to determine the terms and conditions of its own contracts. And because the Guidelines concern only contracts involving the Township's own property, projects and expenditures, they do not violate the LGLRLA. In response, plaintiff argued that regardless of how the Guidelines were labeled, they required employers—even if only employers who have a municipal contract—to pay prevailing wages and fringe benefits to their workers in violation of MCL 123.1386. Plaintiff maintained that it would be unreasonable to conclude that MCL 123.1386 does not apply to government-funded construction projects when that is the primary focus of prevailing-wage schemes.

After hearing oral argument, the trial court granted summary disposition to plaintiff under MCR 2.116(I)(2) (nonmoving party entitled to judgment). The trial court reasoned that despite

their label, the Guidelines required employers working on Township projects to pay a prevailing wage and therefore violate MCL 123.1386. This appeal followed.[1]

## II. DISCUSSION

The Township argues that the trial court erred by concluding that the Guidelines violate MCL 123.1386. We disagree.[2]

### A. *ASSOCIATED BUILDERS*, 499 Mich 177

As an initial matter, the Township relies heavily on *Associated Builders & Contractors v Lansing*, 499 Mich 177; 880 NW2d 765 (2016), in support of its position that when spending its own money on its own projects, it has the authority to determine the terms and conditions of its contracts. We agree with the Township's reading of *Associated Builders* and that it has *constitutional* authority to pass the Guidelines. However, as will be discussed, *Associated Builders* did not address the LGLRLA, and so it is not dispositive of the question presented by this appeal.

*Associated Builders* concerned a city of Lansing ordinance "requiring contractors working on city construction contracts to pay employees a prevailing wage."[3] *Id*. at 181. Relying on *Attorney General ex rel Lennane v Detroit*, 225 Mich 631; 196 NW 391 (1923), the plaintiff argued

---

[1] Several trade unions filed amicus briefs in support of the Township's position on appeal.

[2] We review de novo motions for summary disposition. See *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The Township moved for summary disposition under MCR 2.116(C)(8), which tests the legal sufficiency of a complaint by the pleadings alone. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). Under Subrule (C)(8), we accept all well-pleaded factual allegations as true. See *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The trial court granted summary disposition to plaintiff under MCR 2.116(I)(2), which is appropriate "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment . . . ." Questions of law involving statutory interpretation are reviewed de novo. *Mich Muni Liability & Prop Pool v Muskegon Co Bd of Co Rd Comm'rs*, 235 Mich App 183, 189; 597 NW2d 187 (1999).

[3] The ordinance provided in relevant part:

No contract, agreement or other arrangement for construction on behalf of the City and involving mechanics and laborers, including truck drivers of the contractor and/or subcontractors, employed directly upon the site of the work, shall be approved and executed by the City unless the contractor and his or her subcontractors furnish proof and agree that such mechanics and laborers so employed shall receive at least the prevailing wages and fringe benefits for corresponding classes of mechanics and laborers, as determined by statistics compiled by the United States Department of Labor and related to the Greater Lansing area by such Department. [*Associated Builders*, 499 Mich at 181.]

that the ordinance was unconstitutional "because municipalities do not have the authority to adopt laws regulating the wages paid by third parties, even where the relevant work is done on municipal contracts paid for with municipal funds." *Associated Builders*, 499 Mich at 181. The Supreme Court overruled *Lennane*, determining that it was no longer viable in light of the 1963 state constitution, which had amended the relevant constitutional provision to include the following language:

> Each such city and village shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section. [*Id*. at 185, quoting Const 1963, art 7, § 22 (emphasis removed).]

Further, a new provision, Const 1963, art 7, § 34, was added providing that "[t]he provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor." *Id*. at 186 (quotation marks omitted). Given these provisions "express[ing] the people's will to give municipalities even greater latitude to conduct their business," *id*., the Court held that the municipality had constitutional authority to enact the prevailing-wage ordinance, reasoning in part as follows:

> . . . [T]he wages paid to employees of contractors working on municipal contracts have a self-evident relationship to "municipal concerns, property, and government" if those words are even reasonably, if not liberally, construed. Those wage rates concern how a municipality acts as a market participant, spending its own money on its own projects. If a municipality has broad powers over local concerns, it certainly has the power to set terms for the contracts it enters into with third parties for its own municipal projects—including provisions relating to the wages paid to third-party employees. This way the municipality controls its own money, and presumably expresses its citizens' preference as to what those who work on public projects should be paid. We see nothing in these municipal aims that falls outside the ambit of Article 7, § 22 of the 1963 Constitution. [*Id*. at 187-188.]

The Court concluded that "[u]nder our Constitution, cities and villages may enact ordinances relating to 'municipal concerns, property and government,' including ordinances and charter provisions regulating the wages paid to third-party employees working on municipal construction contracts, 'subject to the constitution and law.' " *Id*. at 192, quoting Const 1963, art 7, § 22.

Significantly, the ordinance at issue in *Associated Builders* was exempt from the LGLRLA because it was passed before December 31, 2014.[4] Accordingly, although *Associated Builders*

---

[4] The LGLRLA's enacting section states that "[t]his act applies to ordinances, local policies, and local resolutions adopted after December 31, 2014." Although the enactment date of the Lansing ordinance is not stated in the Supreme Court's opinion, this Court's opinion in the case was issued on May 27, 2014. *Associated Builders & Contractors v Lansing*, 305 Mich App 395; 852 NW2d

was decided after the LGLRLA was passed, there was no need for the Supreme Court to address the Act and it did not. Contrary to the Township's argument, nothing can be inferred from the Supreme Court's silence on this matter. See *People v Seewald*, 499 Mich 111, 121 n 26; 879 NW2d 237 (2016). Moreover, this case does not concern whether the Township has constitutional authority to adopt the Guidelines. Rather, the question is how that general authority has been curtailed by the LGLRLA. As the *Associated Builders* Court repeatedly noted, a municipality's authority under Const 1963, art 7, § 22, is "subject to the constitution and law." See e.g., *Associated Builders*, 499 Mich at 192. See also *id*. at 188 n 24 ("Nothing in this opinion should be interpreted to imply that municipalities are sovereign entities with extraconstitutional powers or the ability to negate legislative action."). Indeed, the Township does not challenge the Legislature's authority to enact the LGLRLA but instead claims that the Guidelines do not violate the Act. Accordingly, this appeal turns on the interpretation of the LGLRLA.

## B. THE LGLRLA

The statutory provision at issue provides in relevant part:

> A local governmental body shall not adopt, enforce, or administer an ordinance, local policy, or local resolution requiring an employer to pay to an employee a wage or fringe benefit based on wage and fringe benefit rates prevailing in the locality. [MCL 123.1386.]

The first question is whether the Guidelines constitute an "ordinance, local policy, or local resolution." It is not dispositive that the term "guideline" is not found in the statute because this Court looks past a document's label and considers its substance. See e.g., *City of Highland Park v State Land Bank Auth*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355948); slip op at 7 ("Courts are not bound by a party's choice of labels because this would effectively elevate form over substance.") (quotation marks and citation omitted). See also *Recreational Vehicle United Citizens Ass'n v Sterling Heights*, 165 Mich App 130, 136; 418 NW2d 702 (1987) (holding that the challenged ordinance was partly a zoning ordinance and had to comply with the corresponding statutory requirements, despite the city's claim that the challenged ordinance was regulatory in nature).

Looking at the substance of the Guidelines, they are fully equivalent to a local policy or resolution. MCL 123.1386. The Guidelines were adopted by the Township Board, and they state a requirement for all contracts relating to Township projects, property and expenditures over $50,000, i.e., an employer working on such contracts must pay prevailing wages and fringe benefits. The Township argues that MCL 123.1386 does not apply because it has discretion whether to enforce the Guidelines. But MCL 123.1386 prohibits the "adopt[ion]" of a local policy or resolution requiring the payment of prevailing wages in all contracts, whether or not it is enforced. For these reasons, we conclude that the Guidelines are tantamount to a local policy or resolution.

---

433 (2014), vacated by 499 Mich 177 (2016). It follows that the Lansing ordinance was adopted before December 31, 2014.

The next question is whether the Guidelines "requir[e] an employer to pay to an employee a wage or fringe benefit based on wage and fringe benefit rates prevailing in the locality." MCL 123.1386. As already indicated, we conclude that the Guidelines contain this requirement. The Guidelines' use of mandatory language makes clear that employers must agree to pay their workers a prevailing wage in order to enter into a contract with the Township:

> *Any voluntary contract, agreement, understanding, or other arrangement in a total amount over $50,000*, . . . between the Township and any contractor that employs craftsmen, mechanics, or laborers working directly on the site of any construction, maintenance, repair, or remodeling of any Township building or part thereof or any Township sewer or water line or part thereof *will provide* that such craftsmen, mechanics, and laborers working on the Township's work site *will receive* at least the prevailing wages and fringe benefits of the Building Trades Department for corresponding classes of craftsmen, mechanics, and laborers as determined and published by the United States Department of Labor for the Ingham County area. [Emphasis added.]

The Township argues that the Guidelines do not require employers to do anything because no one is compelled to bid on a Township project. Rather, the Guidelines apply only to voluntary agreements between the Township and its contractors. But although the Guidelines do not apply to all employers working in the Township and can be avoided by not bidding on Township projects, this does not change the fact that the Guidelines require every employer that seeks and is awarded a Township contract to pay a prevailing wage. That is enough for the Guidelines to fall within the language of MCL 123.1386.

The Township mostly avoids the language of MCL 123.1386 in its brief and instead focuses on what it believes to be the scope of the LGLRLA. Specifically, the Township argues that the LGLRLA only prohibits local governments from enacting regulations that have the force of law and apply to all employers in the municipality. The Township maintains that the Act does not prohibit local governments from adopting principles that they intend to follow for their own contracts when acting as a market participant. In making this argument, the Township relies on the title of the Act, the Act's preamble and the Legislature's findings and declarations, which provide as follows:

> The legislature finds and declares that *regulation* of the employment relationship between a nonpublic employer and its employees is a matter of state concern and is outside the express or implied authority of local governmental bodies to regulate, absent express delegation of that authority to the local governmental body. [MCL 123.1382 (emphasis added).]

The Township is correct that when interpreting statutes courts should consider the entire legislative scheme and the purpose of the act. *Farish v Dep't of Talent and Economic Dev*, 336 Mich App 433, 438 n 3; 971 NW2d 1 (2021). But we must also apply clear and unambiguous statutory language as written. *Slis v Michigan*, 332 Mich App 312, 336; 956 NW2d 569 (2020). Here, MCL 123.1386 prohibits "*an ordinance, local policy, or local resolution* requiring an employer to pay to an employee a wage or fringe benefit based on wage and fringe benefit rates prevailing in the locality." (Emphasis added). The statute does not refer to "regulations," nor is it

-6-

limited to ordinances, i.e., the vehicle through which municipalities exercise their regulatory power.  Instead, it also prohibits local policies and resolutions, which are not regulations and instead refer to a local government's own practices.  Because MCL 123.1386 is clear and unambiguous as to what it prohibits, we cannot construe it as applying only to regulations directed toward third parties.[5]

To the extent there is any uncertainty regarding the scope of MCL 123.1386, it is settled by MCL 123.1395, which addresses the LGLRLA's effect on voluntary agreements between local governments and employers:

> *Subject to sections 5 to 8 and 11*, this act does not prohibit a local governmental body from adopting, enforcing, or administering an ordinance, local policy, or local resolution that provides for the terms and conditions of a voluntary agreement between an employer and the local governmental body in connection with the provision of services directly to the local governmental body or in connection with the receipt of a grant, tax abatement, or tax credit from the local governmental body. [MCL 123.1395 (emphasis added).]

This provision makes clear that the Legislature contemplated that local governments would enter into their own contracts with employers and that it generally did not intend to limit local governments from setting forth the terms and conditions of those contracts.  And at first glance, MCL 123.1395 might seem to allow adoption of the Guidelines, given that the Guidelines set forth a term and condition of voluntary agreements with the Township.  However, MCL 123.1395 is qualified by the phrase "[s]ubject to sections 5 to 8 and 11," which includes MCL 123.1386, i.e., section 6.  The upshot is that while a local government may adopt a policy or resolution setting forth the terms and conditions of its own contracts, such a policy may not "requir[e] an employer to pay to an employee a wage or fringe benefit based on wage and fringe benefit rates prevailing in the locality."  MCL 123.1386.  For the reasons discussed, the Guidelines do just that, and therefore the exemption provided by MCL 123.1395 offers no respite.  To the contrary, it confirms that the Legislature intended to prohibit local governments from adopting prevailing-wage policies or resolutions, even when they pertain only to the local government's own contracts.

The Township also argues that if the Legislature intended to preclude local governments from entering into contracts with prevailing-wage provisions, it would have done so expressly.  The Township notes that in several other statutory acts, the Legislature has stated specific terms that may not be included in a public contract.[6]  The simple answer to this argument is that the Legislature did *not* preclude local governments from entering into contracts with prevailing-wage provisions.  Again, MCL 123.1386 prohibits a local government from "*adopt[ing], enforce[ing],*

---

[5] To be clear, an ordinance generally requiring employers to pay a prevailing wage for all projects within the Township would violate MCL 123.1386.  The point is that the statute is not limited to such ordinances.

[6] For example, MCL 691.991 prohibits a public entity from placing provisions in its public contracts that require the contractor to indemnify the public entity for any amount greater than the fault of the contractor.

*or administer[ing] an ordinance, local policy, or local resolution* requiring an employer to pay to an employee a wage or fringe benefit based on wage and fringe benefit rates prevailing in the locality." (Emphasis added). MCL 123.1386 is aimed at ordinances, policies and resolutions requiring prevailing wages. But it does not prohibit a local government from entering into a contract with an employer who voluntary pays their employees the local prevailing wage. See MCL 123.1383(e) (defining "ordinance, local policy, or local resolution" to exclude "the terms of an agreement voluntarily offered to a local governmental body by an owner, purchaser, or developer of property."). Along those same lines, MCL 123.1386 also does not prohibit a local government from deciding—on a contract-to-contract basis—to award a contract to an employer that pays the prevailing wage. As discussed in the amicus briefs, the payment of higher wages may mean higher skilled workers, which may save a local government costs in the long run. And the LGLRLA does not preclude local governments from determining on an individual project basis that employee wage and benefit levels are relevant to the determination of which bidder should receive the contract, consistent with the standards defined in its charter and ordinances that do not run afoul of MCL 123.1386.

In conclusion, regardless of nomenclature, the "Guidelines" violate MCL 123.1386. The Township's argument that the LGLRLA applies only to regulations is contrary to MCL 123.1386's unambiguous language that includes local policies and resolutions within its prohibition. If there was any doubt on that matter, MCL 123.1395 further establishes that MCL 123.1386 applies to policies setting the terms and conditions of a local government's own contracts. MCL 123.1386 does not prohibit local governments from entering into contracts with prevailing-wage provisions, so long as those provisions are not required by an ordinance, policy or resolution. In this case, however, the Township has formally adopted a policy requiring all employers working on Township contracts to pay prevailing wages. That action cannot be squared with the statutory language.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Sima G. Patel