*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUGUSTA CHARTER TOWNSHIP,

        Plaintiff/Counterdefendant-Appellee,

UNPUBLISHED
June 27, 2024

v

SHAFIQ KASHAM and KB LANDSCAPE
SUPPLY, LLC,

        Defendants/Counterplaintiffs-
        Appellants.

No. 366699
Washtenaw Circuit Court
LC No. 22-000724-CZ

Before: BOONSTRA, P.J., and CAVANAGH and PATEL, JJ.

PER CURIAM.

In this zoning dispute, defendants challenge an order granting summary disposition of plaintiff's complaint that defendants operated a landscape supply and snow removal business in violation of its zoning ordinance, and dismissing defendants' equal-protection counterclaim. We affirm those decisions, but vacate the part of that order granting injunctive relief that is overly broad by restricting and prohibiting potentially permitted uses.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendants own property located within plaintiff's agricultural residential (AR) zoning district, as stated in Augusta Charter Township Zoning Ordinance § 3.5(C). Starting in 2020, defendants operated a landscape supply and snow removal business, storing salt, mulch, pavers, commercial vehicles, and equipment on the property. In August 2021, plaintiff sent a notice to defendants that stated:

> The current use of the site as a business, KB Landscaping and Snow Removal, and more specifically as a work staging area for employees to park personal vehicles, and the storage of large commercial trucks, landscaping supplies and trees, and other equipment is not a use that is permitted by right in the AR District.

A month later, Mohamad Kahala and Naji Kahala of KB Nursery and Landscape Supply (KBNLS) applied for "no construction proposed" zoning compliance approval for use of the

property as "a landscape supply nursery including equipment and vehicle storage." The application was denied. In November 2021, KBNLS applied for a special land use permit. The proposed use stated in the application was: "KB Nursery will hold nursery stock and bulk materials." Plaintiff's Planning Commission denied the application, finding the property use did not meet the zoning ordinance definition of a "plant material nursery," but was instead "most similar to a landscape supply and contractor yard for the purpose of providing landscape supply contractor services and for the storage and sale of landscape supply supplies." KBNLS appealed the denial of the special use permit to the circuit court.

In June 2022, before the disposition of the appeal of the special use permit denial, plaintiff brought this action alleging that defendants' landscape supply and snow removal business violated plaintiff's zoning ordinance because it was not a permitted use of property within the AR district. Plaintiff specifically alleged that defendants' storage of commercial vehicles, equipment, mulch, and other materials was in violation of the zoning ordinance, in addition to:

> construction of both temporary and permanent structures on the Property, to wit: cinderblock walls and storage bins for the storage of landscape supply materials and supplies, and the construction of a structure for the storage of landscape supply trees and other plants used in the conduct and operation of the commercial business.

Plaintiff requested injunctive relief, requiring defendants to cease and desist numerous activities related to the business, and "any and all use of the Property for the conduct of any commercial activity."

Defendants answered, denying that the list of permitted uses found in Augusta Charter Township Zoning Ordinance § 3.5(C)(1) "represents an exhaustive permissible use, den[ying] that the 'list' accounts for alternative special uses, [and] den[ying] that Plaintiff enforces said 'list' against all property owners within the Township." Defendants also maintained that their use of the property "is consistent with a special permitted use as set forth in detail in the documentation, briefing and exhibits pending before the Court in regard to [the special use permit appeal]."

On the same date, defendants filed a counterclaim alleging, in pertinent part, an equal-protection claim under the Michigan and United States Constitutions, US Const, Am XIV; Const 1963, art 1, § 2, asserting that the ordinance was irrationally enforced against them, while similarly-situated property owners and users had been treated differently. This claim included an allegation that plaintiff treated defendants as a "class of one." In other words, defendants alleged that other properties near defendants engaged in the same or similar businesses without special use permission or approval and yet plaintiff did not take any action against those owners.

Meanwhile, in December 2022, the circuit court denied KBNLS's claim of appeal concerning the denial of the special use permit, finding that the decision was authorized by law and supported by competent, material, and substantial evidence. A week later, articles of organization for a new entity, Kahala Brothers Farm, LLC, were filed with the Michigan Department of Licensing and Regulatory Affairs.

Thereafter, plaintiff moved for summary disposition under MCR 2.116(C)(10) as to its complaint, and under MCR 2.116(C)(8) as to defendants' equal-protection claim. Plaintiff argued

that no genuine issue of material fact existed that the property at issue is zoned for agricultural residential uses under its zoning ordinance and the list of permitted uses, as set forth in § 3.5(C), does not include commercial business uses like defendants' landscape supply and snow removal business; accordingly, plaintiff was entitled to summary disposition. Further, plaintiff argued, in relevant part, defendants failed to state a valid claim for an equal protection violation, and thus, its counterclaim must be dismissed.

Defendants responded to plaintiff's motion, arguing that after the trial court denied its appeal with regard to the special use permit, defendants changed their use of the property. That is, the property was no longer being used as a landscape supply and snow removal business; rather it was being used in a manner consistent with the Michigan Right to Farm Act (RTFA), MCL 286.471 *et seq.*, as a farm operation, which is specifically permitted under § 3.5(C) of plaintiff's zoning ordinance. However, defendants argued, the relief that plaintiff requested from the trial court would prohibit defendants from even using their property in this manner, and thus, must be denied. Further, defendants argued, plaintiff was not entitled to summary dismissal of their equal-protection counterclaim because defendants stated a valid claim upon which relief could be granted with respect to plaintiff's "selective enforcement" of the ordinance at issue considering the substantially similar businesses being operated on nearby properties. Accordingly, defendants requested that the trial court deny plaintiff's motion for summary disposition.

Plaintiff filed a supplemental brief in support of its motion for summary disposition, arguing that defendants' landscape supply and snow removal business use was the subject of the complaint and there was no indication that defendants were allegedly operating a farm. Pursuant to MCR 2.111, defendants waived their right to assert the RTFA as an affirmative defense or to raise as a defense that their purported use conformed with the ordinance. Accordingly, plaintiff argued, the trial court should not consider any such claim. Further, even if plaintiff did selectively enforce its ordinance, which plaintiff denied, selective enforcement is not a violation of equal-protection rights under the circumstances presented in this case. Therefore, plaintiff argued that its motion should be granted.

At the hearing on the motion, the parties argued consistently with their briefs. The trial court concluded that this case was quite similar to that of *Lima Twp v Bateson*, 302 Mich App 483; 838 NW2d 898 (2013), which, plaintiff argued, specifically stated that the RTFA is an "affirmative defense that has to be pled." The trial court indicated it would grant summary disposition of the claim and counterclaim in favor of plaintiff. Defendants' counsel requested clarification of the ruling, to ensure that the court did not mean that defendants could not operate a business or commercial venture. Plaintiff's counsel interjected that, if defendants were farming on the property, that was permitted under the ordinance pursuant to the RTFA. However, "[t]he storage of commercial landscape supply supplies, the construction of bins on that property, the storage and use of commercial vehicles, the parking of employee vehicles, the coming and going of employees, the coming and going of commercial traffic to and from that property, none of that is related to a farming operation[.]" The trial court agreed, stating "that's exactly what happened in *Bateson*."

Subsequently, plaintiff submitted a proposed order which stated:

IT IS ORDERED that the nuisance under MCL 125.3407 shall be abated. Defendants shall cease and desist from conduct and operations of the landscape supply and snow removal business on the Property as follows:

1. All use of the Property for the conduct of commercial activity, including the operation and conduct of KB Landscape and Snow Removal services or related services for which a Certificate of Zoning Compliance was not issued;

2. All storage of commercial vehicles, equipment and landscape supplies which shall be removed from the Property except as approved by Township;

3. All use of the Property as a contractor's establishment, contractors storage yard, and for a staging area for the parking of employee vehicles and the coming and going of employees and contractors to and from the Property;

4. All use and occupancy of any buildings or structures that were constructed without permits and for which no certificate of occupancy has been granted. Except as permitted by Township, such structures shall be razed and removed to include all block storage bins and storage corrals;

5. All conduct and operations related to movement, storage, and sale of landscaping materials and supplies unless a zoning compliance certificate has been granted by the Township; and

6. All parking, storage and operation of commercial vehicles at or on the Property.

Defendants objected to the proposed order, arguing that it created remedies not expressly granted by the trial court. Defendants had no objection to language barring operation of the landscape supply and snow removal company, but objected to language barring uses greater than the existing zoning did with regard to, among other things, supplies and materials, employees, storage, and commercial vehicles, which were arguably associated with a permitted farming use. At the hearing held on defendants' objections, plaintiff argued that the issue of farming operations protected by the RTFA was not properly before the court because it was not pleaded. But in any case, plaintiff argued, to qualify as a farming operation, the farm products involved need to be produced on the property. Ultimately, the trial court overruled defendants' objections and again referenced a similarity with *Bateson* as its reasoning. On June 2, 2023, the trial court entered an order granting summary disposition as to plaintiff's complaint under MCR 2.116(C)(10), and dismissing defendants' equal-protection counterclaim under MCR 2.116(C)(8). The court held that the conduct and operation of a landscape supply and snow removal business was not permitted under plaintiff's ordinance in the AR zoning district. Nevertheless, defendants commenced such a business without zoning approval by plaintiff and no genuine issue was raised by defendants to refute these conclusions. Further, for the reasons stated by plaintiff, defendants failed to state an equal-protection counterclaim for which relief may be granted. Therefore, the trial court ordered that the nuisance be abated. Defendants were to cease and desist from conduct and operations of the landscape supply and snow removal business on the property and the list of remedies from plaintiff's proposed order was replicated in the trial court's order. This appeal followed.

On appeal, defendants argue that: (1) plaintiff was not entitled to summary disposition of its ordinance enforcement claim under a nuisance per se theory because defendants' *modified* use of their property was permitted by the zoning ordinance; (2) the injunctive relief provided in the order granting summary disposition was impermissibly broad because it bars uses permitted by the zoning ordinance and the RTFA; and (3) defendants stated a valid equal-protection counterclaim thus the trial court's dismissal of this claim under MCR 2.116(C)(8) was improper.

## II. STANDARD OF REVIEW

We review de novo summary disposition rulings. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of a claim and is tested on the pleadings alone." *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 139; 565 NW2d 383 (1997). This motion challenges "whether the plaintiff's pleadings allege a prima facie case." *Garvelink v Detroit News*, 206 Mich App 604, 607; 522 NW2d 883 (1994). A court may grant the motion only if the claim is "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citation omitted).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Id*. at 120. The pleadings, affidavits, depositions, and other documentary evidence is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). The trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (citation omitted).

A decision whether to grant injunctive relief is reviewed for an abuse of discretion. *Detroit Fire Fighters Ass'n, IAFF Local 344 v City of Detroit*, 482 Mich 18, 28; 753 NW2d 579 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). The factual findings a trial court makes in the process of granting injunctive relief are reviewed for clear error. *Slis v State of Mich*, 332 Mich App 312, 335; 956 NW2d 569 (2020).

"Ordinances are treated as statutes for the purposes of interpretation and review," and thus, we review the application and interpretation of ordinances de novo. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). The goal "is to discern and give effect to the intent of the legislative body." *Id*. at 407-408. "Terms used in an ordinance must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions." *Id*. at 408. While we review de novo a trial court's decision in an appeal from a zoning board, we accord great deference to the trial court and zoning board's factual findings. *Norman Corp v City Of East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004).

III.  SUMMARY DISPOSITION OF ORDINANCE ENFORCEMENT CLAIM

The trial court properly granted plaintiff's motion for summary disposition because no genuine issue of material fact existed that defendants' landscape supply and snow removal business was in violation of the applicable zoning ordinance as plaintiff alleged in its complaint.

Local units of government are granted authority to regulate land use and development through zoning under the Michigan Zoning Enabling Act, MCL 125.3101 *et seq*. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 515; 838 NW2d 915 (2013).  MCL 125.3407 provides for the enforcement of a zoning ordinance and the abatement of a nuisance per se:

> Except as otherwise provided by law, a use of land or a dwelling, building, or structure, including a tent or recreational vehicle, used, erected, altered, razed, or converted in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se.  The court shall order the nuisance abated, and the owner or agent in charge of the dwelling, building, structure, tent, recreational vehicle, or land is liable for maintaining a nuisance per se.  The legislative body shall in the zoning ordinance enacted under this act designate the proper official or officials who shall administer and enforce the zoning ordinance and do 1 of the following for each violation of the zoning ordinance:
>
> (a) Impose a penalty for the violation.
>
> (b) Designate the violation as a municipal civil infraction and impose a civil fine for the violation.
>
> (c) Designate the violation as a blight violation and impose a civil fine or other sanction authorized by law. . . .

Consistent with that statutory authority, plaintiff's zoning ordinance states:

> In case any building, or part thereof, is used, erected, occupied or altered contrary to the provisions of this Ordinance, such building or use shall be deemed an unlawful nuisance and may be required to be vacated, torn down or abated by any legal means, and shall not be used or occupied until it has been made to conform to the provisions of this Ordinance.  Public expenditures toward abating any such nuisance shall become a lien upon the land.  [Augusta Charter Township Zoning Ordinance § 5.2.]

Defendants' property is located in the AR zoning district.  Plaintiff's zoning ordinance describes its "intent and purpose" for the AR zoning district as:

> The intent of the Agricultural Residential district is to provide a district in which low-density single-family residential development and agricultural pursuits may occur in close proximity to each other along with other compatible uses often occupying large areas.  The predominant use of the Agricultural Residential district shall be considered residential.  The regulations of this district are designed to protect and promote low-density residential land use, while accommodating

agricultural activities. These regulations are also designed to exclude uses and buildings which demand substantial public services, such as major thoroughfares, centralized sewer or water facilities, and other public services. [Augusta Charter Township Zoning Ordinance § 3.4(C).]

The AR district permits several uses, including "Agricultural uses in compliance with the Right to Farm Act." [Augusta Charter Township Zoning Ordinance § 3.5(C)(1).]

Defendants argue on appeal, as they did in the trial court, that they modified their use—*after* this enforcement action was filed by plaintiff—so as to conform with the requirements of the AR zoning district. That is, defendants argued that the property is no longer being used as a landscape supply and snow removal business; rather, it is being used in a manner consistent with the RTFA, as a farm operation, which is specifically permitted under § 3.5(C) of plaintiff's zoning ordinance.[1] However, even if true, the fact that defendants allegedly modified their use is irrelevant here. The case before the trial court was based on the complaint that plaintiff filed against defendants and that complaint asserted that defendants were operating a landscape supply and snow removal business which was not a permitted use in the zoned AR district where the property was located. Plaintiff asserted that defendants' improper and illegal use of the property violated the applicable zoning ordinance and constituted a nuisance per se. Consequently, plaintiff requested that the trial court grant a preliminary, and ultimately a permanent, injunction to prohibit the zoning nuisance activity.

Defendants claim that they no longer operate a landscape supply and snow removal business on that property. In other words, defendants apparently concede that their former use constituted a nuisance per se—as plaintiff alleged in its complaint. Nevertheless, defendants still argue that summary disposition of plaintiff's claim was erroneous. Defendants want us to consider whether their *modified* use conforms to plaintiff's ordinance. This we will not do. That is an entirely different case than the case pleaded by plaintiff. If defendants' current use of their property—as allegedly modified—constitutes nuisance activity, plaintiff may bring another lawsuit to that effect. But that is for plaintiff to determine in the first instance, not the trial court or this Court. This lawsuit claimed that defendants' landscape supply and snow removal business was a nuisance and sought an injunction to enforce its zoning ordinance. Defendants presented no evidence that their use of the property as a landscape supply and snow removal business was not, in fact, a nuisance. Accordingly, there is no genuine issue of material fact that defendants' landscape supply and snow removal business constituted a nuisance and plaintiff was properly granted summary disposition of its claim against defendants. The issue remains whether the specific injunctive relief granted by the trial court was proper.

---

[1] Contrary to the trial court's conclusion, this case is factually distinguishable from *Bateson*, 302 Mich App 483. In that case, the plaintiff township alleged in its complaint that the defendants' use of their property constituted a nuisance per se and the defendants argued that their use—the exact same use and not a later modified use as is the case here—did not constitute a nuisance per se. *Id*. at 485-486.

## IV.  INJUNCTIVE RELIEF

Because the order granting injunctive relief appears to prohibit uses of the property that are permitted in the AR zoning district, including agricultural uses that comply with the RTFA, see Augusta Charter Township Zoning Ordinance § 3.5(C)(1), the trial court abused its discretion in entering the order.  See *Detroit Fire Fighters Ass'n IAFF Local 344*, 482 Mich at 28.

After plaintiff's motion for summary disposition was granted by the trial court, plaintiff submitted a proposed order in that regard, as discussed above.  Defendants objected to the proposed order, arguing that it was overly broad because it restricted or barred uses permitted by the zoning ordinance.  As set forth above, in brief, the order requires defendants to cease and desist:

1. All use of the Property for the conduct of commercial activity . . . ;

2. All storage of commercial vehicles[ and] equipment . . . ;

3. All use of the Property . . . for . . . the coming and going of employees and contractors to and from the Property;

* * *

5. All conduct and operations related to movement, storage, and sale of landscaping materials and supplies . . . ; and

6. All parking, storage and operation of commercial vehicles at or on the Property.

While these activities may be prohibited as to defendants' landscaping supply and snow removal business, the prohibitions are broadly drafted and may be misunderstood to also apply to even potentially allowable activities under the applicable zoning ordinance.  For example, some of these prohibited activities are potentially allowable under the RTFA as associated with a farm operation, and yet no exception is mentioned in the order to allow for this distinction.  See *Bateson*, 302 Mich App at 493; see also MCL 286.474(6).  Instead the injunction language seems to be an attempt to preclude all commercial activity, though protection of farm commercial activity was argued by defendants as an objection to the proposed order.  Because of the likelihood of confusion and over-reach with regard to the specific injunctive relief awarded plaintiff, the trial court abused its discretion entering the order.  See *Khouri*, 481 Mich at 526.  We vacate that part of the order and remand this matter to the trial court for entry of an order granting injunctive relief that is not overly broad so as to restrict and prohibit potentially permitted uses.  The injunctive relief should pertain only to defendants' operation of the landscape supply and snow removal business which constituted the zoning violation.

## V.  EQUAL-PROTECTION CLAIM

After de novo review, we conclude that defendants' equal-protection counterclaim was legally insufficient and summary disposition of this claim under MCR 2.116(C)(8) was proper.  See *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010).

Equal protection of the law is guaranteed by both the federal and Michigan constitutions. US Const, Am XIV; Const 1963, art 1, § 2; *Shepherd Montessori Ctr Milan*, 486 Mich at 318. Both guarantees afford similar protection. *Id*. The purpose of the equal-protection guarantee is to secure every person against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution. *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000) (citations omitted). The equal-protection guarantee requires persons under similar circumstances be treated alike; it does not require persons under different circumstances be treated the same. *El Souri v Dep't of Social Servs*, 429 Mich 203, 207; 414 NW2d 679 (1987); *Champion v Secretary of State*, 281 Mich App 307, 324; 761 NW2d 747 (2008).

As aptly explained by the United States Court of Appeals for the Sixth Circuit Court in *Futernick v Sumpter Twp*, 78 F3d 1051, 1056 (CA 6, 1996), overruled on other grounds by *Olech*, 528 US 562:

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere . . . .

> Sometimes the enforcement of an otherwise valid law can be a *means* of violating constitutional rights by invidious discrimination. To address this problem, courts have developed the doctrine of selective enforcement. Usually, a claim of selective enforcement arises as a defense in a criminal prosecution or regulatory enforcement action. In this context, the court should dismiss a case, or take other appropriate action, if the defendant can prove that the prosecutor or investigator intentionally "singled him out" for punishment because of membership in a protected group or the exercise of a constitutionally protected right.

As similarly stated by this Court in *Recreational Vehicle United Citizens Ass'n v Sterling Hts*, 165 Mich App 130, 141; 418 NW2d 702 (1987), "the equal protection clause is concerned with acts of invidious discrimination among classes and not with mere acts of unequal enforcement which may be the result of erroneous or even arbitrary administration of facially-neutral ordinances."

A "class-of-one" equal protection claim asserts that an individual has been "irrationally singled out" for discriminatory treatment. *Engquist v Oregon Dep't of Agricultural*, 553 US 591, 601; 128 S Ct 2146; 170 L Ed 2d 975 (2008). That is, the individual alleges that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. (quotation marks and citations omitted). As the *Engquist* Court explained:

> [T]he Fourteenth Amendment "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes v Missouri*, 120 US 68, 71-72; 7 S Ct 350; 30 L Ed 578 (1887). When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a

rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a "rational basis for the difference in treatment." *Olech*, 528 US at 564. [*Id*. at 602.]

The *Engquist* Court further explained that in the case of *Olech*, 528 US 562, the complaint alleged that the zoning board was seeking to enforce a 33-foot easement as to the plaintiff's property, although the zoning board had consistently required only a 15-foot easement. *Id*. at 602-603. In other words, there was a "clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id*. at 602. And because the "differential treatment raised a concern of arbitrary classification," a rational basis for it had to be provided. *Id*. at 603. The *Engquist* Court contrasted that situation—where a clear standard was not applied by the zoning board—to a situation that by its nature involves discretionary decisionmaking based on subjective and individualized assessments, i.e., no set standard exists to compare with the disputed action. *Id*. The Court cautioned that in such situations "a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id*.

In this case, defendants alleged in their counterclaim that they were singled out by plaintiff for enforcement of the ordinance while others similarly situated to defendants were not and there was no rational basis for the different treatment. Further, defendants alleged, plaintiff's denial of its application for special use was irrational and arbitrary. Defendants alleged that there was "no conceivable basis" that could support these actions. However, as the trial court concluded, these generalized allegations, alone, are not sufficient to state a valid equal-protection claim. It is clear that plaintiff was entitled to enforce its ordinance; no specific similarly-situated property owners were identified by defendants; no specific standard was identified that could be assessed with regard to the purported misconduct; and this claim is wholly premised on discretionary decisionmaking—involving subjective, individualized assessments, to which plaintiff is entrusted to exercise. In summary, defendants' generalized accusations of equal-protection violations do not set forth a valid claim that they were irrationally singled out for differential or discriminatory treatment. See *Engquist*, 553 US at 601. Even if defendants were the only property users among the allegedly similarly-situated users against whom the ordinance has been enforced, plaintiff may assert a rational explanation such as that defendants were the first to be known or identified as violators of the ordinance. In any case, the trial court properly held that defendants failed to state an equal-protection counterclaim and dismissal under MCR 2.116(C)(8) was proper.

## VI. CONCLUSION

Summary disposition of plaintiff's zoning enforcement action was proper because no genuine issue of material fact existed that defendants' landscape supply and snow removal business was in violation of the applicable zoning ordinance as plaintiff alleged in its complaint. Summary disposition of defendants' equal-protection counterclaim was proper because defendants failed to state a claim upon which relief could be granted. However, the part of the June 2, 2023 order granting summary disposition that is labeled "Remedies" is vacated because it is overly

broad by restricting and prohibiting potentially permitted uses. We remand this matter for entry of an order granting injunctive relief that is proper in scope, i.e., pertains only to defendants' operation of the landscape supply and snow removal business which constituted the zoning violation.

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Sima G. Patel